STEVEN KOULES, Plaintiff-Appellant, v. EURO-AMERICAN ARBITRAGE, INC., Defendant-Appellee.

Second District    No. 2—97—0145

Opinion filed January 5, 1998.

John M. Heaphy, Jr., George N. Vurdelja, Jr., and Griswald L. Ware, all of Vurdelja & Heaphy, of Chicago, for appellant.

Bennett L. Epstein and Diane E. Gianos, both of Hopkins & Sutter, of Chicago, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Steven Koules, appeals from a circuit court order that granted summary judgment against him and in favor of defendant, Euro-American Arbitrage, Inc. Plaintiff's amended complaint claimed

that defendant owed plaintiff (1) part of a guaranteed salary and (2) compensation for vacation benefits pursuant to a written employment contract.

In May 1993, plaintiff began employment with defendant as an equity derivative trader. Plaintiff had the status of a vice-president and worked in defendant's Chicago office. Before defendant hired him, plaintiff worked in New York.

By January 1994, plaintiff had become concerned about defendant's long-term commitment to its Chicago office. Plaintiff communicated this concern to defendant's management and the management of defendant's parent companies, Banque Internationale de Placement (BIP) and Dresdner Bank (Dresdner).

On February 3, 1994, plaintiff and defendant entered into a new employment contract which was effective January 31, 1994 (the employment contract). Under the employment contract, defendant promoted plaintiff to senior vice-president and placed plaintiff in charge of trading in its Chicago office. Plaintiff continued to do his own trading but was also given the responsibility to supervise the trading activities of other traders.

The employment contract specified that plaintiff was entitled to "4 weeks paid vacation." Plaintiff was also entitled to an annual draw of $200,000, which was to be deducted from an annual bonus payable on January 31 of the following year. The annual bonus was based on certain percentages of profits realized from plaintiff's own trading activities and from the trading activities of the traders that plaintiff supervised.

The employment contract also specified that it was for a two-year period and that defendant guaranteed plaintiff an annual minimum salary of $250,000. The employment contract clarified these terms as follows:

> "That means that if we were to ask you to leave our company without cause during that period of time, you would be compensated so that you would have received this floor guarantee. If we terminate you for cause or in the case [sic] you decide to resign from our company, you will no longer receive your salary payments."

On July 25, 1994, plaintiff sent a letter to Dominique Ould-Ferhat, defendant's managing director, at his office in Paris, France. The letter stated:

> "Please find my enclosed resignation as Head of Trading.
> I understand this implies my loss of the percentage of trading desk P&L and the rescinding of my salary guaranty for this and next year. Should you wish, I will continue in the capacity of an

equity derivative trader as long as the original conditions which pertained to my personal trading compensations and conditions of employment that applied until this point shall continue through the end of the year."

In response to the July 25 letter, defendant flew plaintiff to Paris. In Paris, plaintiff met with Ould-Ferhat and managers in defendant's parent organization. They advised plaintiff that they would address his concerns and convinced plaintiff to withdraw his resignation and continue as the head of trading in defendant's Chicago office.

On October 27, 1994, plaintiff sent another letter to Ould-Ferhat. The October 27 letter stated, in relevant part:

"Morale continues to deteriorate here, and I no longer wish to continue in my responsibilities as trading manager. I will continue as equity derivative trader as described in the letter in which I originally resigned as trading manager."

In response to the October 27 letter, Ould-Ferhat came to Chicago and met with plaintiff. Plaintiff testified in a deposition that Ould-Ferhat told him at the meeting that it had been decided to close the Chicago office and that Ould-Ferhat would be meeting in the future with individual employees, including plaintiff, to finalize things.

Ould-Ferhat and plaintiff met again on November 11, 1994. Plaintiff testified that Ould-Ferhat handed him a first draft of a letter agreement regarding plaintiff's employment with defendant. This first draft offered plaintiff $60,000 in severance compensation. Plaintiff testified that he told Ould-Ferhat that $60,000 was "no where near the magnitude of what I felt it should have been according to my contract." Plaintiff further testified that Ould-Ferhat then had the severance figure changed to $100,000 and told plaintiff that was the best that defendant could do.

The November 11 letter agreement advised plaintiff that "at this time, it is not possible to make any final decision with regard to your personal [employment] situation." However, plaintiff testified in his deposition that Ould-Ferhat made it clear to plaintiff that defendant did not plan to offer plaintiff another position.

The November 11 letter agreement also stated:

"In the event we are unable to propose you [sic] a position that is compatible with your qualifications and background in our Group and acceptable to you, we are ready to provide you with a severance compensation, amounting $100,000 [sic], paid in the form of a lump sum. This severance compensation would be paid as soon as all your existing [trading] positions are totally and properly closed.

Should you accept this severance compensation, we would require from you that you renounce to engage into [sic] any kind of legal

action against BIP, Dresdner Bank and/or any of their affiliated companies, provided that your 1994 Bonus has been totally paid."

Plaintiff acknowledges that he signed the November 11 letter agreement during his meeting with Ould-Ferhat. Defendant subsequently gave plaintiff a check dated November 21, 1994, in the amount of $459,687.25. According to statements made by Ould-Ferhat in an affidavit, the check represented the after-tax amount that defendant owed plaintiff for his 1994 bonus plus the $100,000 lump-sum severance payment referred to in the letter agreement. Thus, in defendant's view, the check represented all defendant owed plaintiff. Plaintiff cashed the check.

In his amended complaint, plaintiff claimed that the amount defendant offered him in the November 11 letter agreement was less than the amount defendant owed him under the employment contract. Plaintiff claimed that, in addition to the amount defendant offered him, he was entitled to (1) $150,000, the difference between the $250,000 minimum salary defendant owed him for 1995 and the $100,000 lump-sum severance payment he received; and (2) $20,833.33, the value of four weeks of paid vacation due him for 1994. The amended complaint states that plaintiff signed the November 11 letter agreement even though defendant owed plaintiff more than it offered him because plaintiff feared that if he did not sign the letter agreement and accept the offer defendant would not pay him anything.

In count I of his amended complaint, plaintiff claimed that defendant breached the employment contract by not paying plaintiff all he was owed under the contract. Count II claimed that defendant violated the Illinois Wage Payment and Collection Act (Wage Payment Act) (820 ILCS 115/1 *et seq.* (West 1996)) by failing to pay plaintiff the vacation pay he was entitled to upon the termination of his employment with defendant.

In support of its motion for summary judgment, defendant argued that the November 11 letter agreement signed by plaintiff was either a release, an accord and satisfaction, or a covenant not to sue which barred plaintiff's action against defendant. Defendant also asserted that plaintiff was not entitled to 1994 vacation pay because he took more than four weeks vacation while being paid in 1994. In addition, defendant maintained that, even if plaintiff had not taken his 1994 vacation time, the lump-sum severance payment would more than compensate plaintiff for any vacation time due him and was an acceptable means of payment under the Wage Payment Act.

The trial court entered an order granting defendant's motion for summary judgment. Plaintiff's timely appeal followed.

■ In all cases of summary judgment, a reviewing court conducts a *de novo* review of the evidence in the record. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1996); *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996). While a plaintiff opposing a motion for summary judgment need not prove his case at the summary judgment stage, to survive the motion for summary judgment he must present a factual basis that would arguably entitle him to judgment. *Allegro*, 172 Ill. 2d at 256.

We will separately address the questions of whether defendant owed plaintiff part of the guaranteed salary and whether defendant owed plaintiff compensation for vacation benefits. As to the guaranteed salary, the parties do not raise any material issues of disputed fact. Rather, the question turns on the legal issues of whether the November 11 letter agreement in conjunction with defendant's payment to plaintiff of the amount offered in the letter agreement constituted an accord and satisfaction and/or whether the letter agreement constituted a release which operated to bar plaintiff's cause of action against defendant.

■ There is some dispute between the parties as to whether the letter agreement should be analyzed as an accord and satisfaction or as a release. We believe that the November 11 letter agreement contained elements of both an accord and satisfaction and a release. An accord and satisfaction is a contractual method of discharging a debt or claim by some performance other than that which was originally due. *Holman v. Simborg*, 152 Ill. App. 3d 453, 456 (1987). A release is a contract whereby a party abandons a claim or relinquishes a right that could be asserted against another. *Johnson v. Maki & Associates*, 289 Ill. App. 3d 1023, 1026-27 (1997).

The part of the letter agreement that was in the nature of an accord and satisfaction involved the agreement by plaintiff to accept $100,000 as a lump-sum severance payment when he contends that he was entitled to a $250,000 guaranteed salary for 1995 under the employment contract. The part of the letter agreement that was in the nature of a release involved plaintiff's agreement to relinquish his right to bring any legal action against defendant or its parent companies.

■ We first address whether the letter agreement and the subsequent related payment was an accord and satisfaction. To con-

stitute an accord and satisfaction, there must be (1) an honest dispute between the parties as to an amount owed between them; (2) a tender of payment with the explicit understanding of both parties that it is in full payment of all demands; and (3) an acceptance of the payment by the creditor with the understanding that it is accepted as full payment. *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905, 911 (1993).

Thus, where there is an honest dispute as to an amount owed and due between parties and the debtor tenders a check with the explicit understanding that it is full payment of all demands, the creditor's acceptance and negotiation of the check is an accord and satisfaction. *In re Estate of Castro*, 289 Ill. App. 3d 1071, 1077 (1997). However, the partial payment of a fixed and certain demand that is due and not in dispute does not constitute a satisfaction of the entire debt even where the creditor agrees to receive a partial payment for the whole debt and gives a receipt for the whole demand. *A.F.P. Enterprises*, 243 Ill. App. 3d at 911.

█ In this case, plaintiff contends that there was no accord and satisfaction because there was no honest dispute between the parties as to the amount owed. Plaintiff does not contend that he did not understand that defendant offered the payment as full payment of all demands. Rather, plaintiff contends that his acceptance of the $100,000 payment offered by defendant in the letter agreement did not constitute an accord and satisfaction because defendant indisputably owed plaintiff a guaranteed salary for 1995 of $250,000 under the terms of the employment contract. In support of this position, plaintiff argues that defendant terminated him without cause and was therefore required to pay him the full $250,000 yearly guaranteed salary.

We agree with plaintiff that, under the terms of the employment contract, if defendant had terminated him without cause, defendant would have owed plaintiff $250,000 for the second year of the employment contract. However, the record does not support plaintiff's position that defendant terminated him without cause.

The primary reason for our conclusion that defendant did not terminate plaintiff without cause is the November 11 letter agreement. The letter agreement unambiguously states that defendant had not yet made a final decision as to plaintiff's employment with defendant when plaintiff accepted the severance payment offered by defendant. The letter agreement's offer of the severance payment to plaintiff was contingent on defendant being unable to propose a suitable position to plaintiff.

However, plaintiff opted to accept the proposed severance pay-

ment immediately after negotiating a substantially greater lump-sum payment amount than the amount defendant initially offered. Under the terms of the letter agreement, plaintiff could have waited to see if defendant offered him another position. If defendant did not offer plaintiff another position within the time frame of the employment contract, then plaintiff could have demanded the guaranteed salary. Plaintiff instead chose to immediately accept the severance option. Thus, under the terms of the letter agreement, defendant did not terminate plaintiff; rather, plaintiff accepted defendant's severance payment offer and effectively agreed to be terminated immediately instead of waiting to see if defendant offered him another position.

We recognize that plaintiff testified that Ould-Ferhat made it clear, in oral statements, that defendant did not really intend to offer plaintiff another position. However, the unambiguous terms of the letter agreement to the effect that no final decision had been made regarding plaintiff's employment with defendant are controlling. See *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990) (if no ambiguity in written agreement, court must determine parties' intent solely from writing).

We note that, by immediately accepting the severance payment offer, plaintiff positioned himself to be immediately available for other employment, for which he would presumably receive remuneration, while retaining the severance payment. Under the terms of the letter agreement and the employment contract, if plaintiff had not accepted the severance payment, he would have had to be available for other employment with defendant in order to be entitled to the guaranteed salary.

In addition to the terms of the letter agreement, there are other grounds for concluding that defendant did not terminate plaintiff without cause. In his October 27 letter to defendant, plaintiff sought to resign from his position as trading manager. The October 27 letter incorporated the terms of plaintiff's July 25 resignation letter. In the July 25 resignation letter, plaintiff stated that he understood that his resignation as trading manager would result in his loss of the guaranteed salary. Thus, under the terms of his proposed resignation, plaintiff concedes that he would not be entitled to the guaranteed salary if defendant accepted his resignation.

Plaintiff attempts to counter the effects of his resignation letter by asserting that defendant did not accept his attempted resignation and that he continued in his position as trading manager until defendant terminated him. However, the record shows that defendant responded to plaintiff's October 27 resignation letter by deciding to

close its Chicago office. This could certainly be construed as an acceptance of plaintiff's attempted resignation in that, as a result of the resignation letter, defendant decided to close the office and eliminate all the positions in the office, including the position from which plaintiff sought to resign.

Finally, even if defendant's response to plaintiff's October 27 letter is viewed as a termination of plaintiff, which is contradicted by the terms of the November 11 letter agreement, it could be regarded as a termination with sufficient cause. It is undisputed that in response to plaintiff's letter defendant decided to close its Chicago office. Defendant's decision to close the office and terminate or move all of the employees in that office was arguably sufficient cause for plaintiff's dismissal. See *Penzell v. Taylor*, 219 Ill. App. 3d 680, 689 (1991) (employer's closing of an office and termination of all employees in that office constituted sufficient cause for dismissal of employee with guaranteed salary).

Based on this record, we conclude that defendant did not terminate plaintiff, or if it did terminate plaintiff, it arguably did so with cause. In either case, defendant had a good-faith basis to dispute that it owed plaintiff the guaranteed salary. In view of this honest dispute regarding what, if anything, defendant owed plaintiff, defendant's offer to plaintiff of the severance payment, plaintiff's acceptance of the offer, and defendant's subsequent payment to plaintiff of the offered amount with the understanding that it was a full payment of any amount defendant owed plaintiff constituted an accord and satisfaction with respect to the guaranteed salary.

We next address the question of whether the November 11 letter agreement also constituted a valid and effective release. The part of the November 11 letter agreement that defendant asserts is a release states that if plaintiff accepted the offered severance payment he was required to renounce his right to engage in any legal action against defendant or its parent companies provided that his 1994 bonus was totally paid. Plaintiff signed the letter agreement, accepted the offered severance payment, and cashed the check that defendant tendered to plaintiff to cover plaintiff's 1994 bonus and the lump-sum severance payment.

■ On appeal, a substantial part of the parties' arguments concerns whether consideration is required for a release to be valid. In a recent opinion, this court resolved that question by clearly stating that a release, like any other contract, generally requires consideration to be valid. *Johnson*, 289 Ill. App. 3d at 1026.

■ Plaintiff next contends that the severance payment offered by defendant in the letter agreement was not sufficient consideration to

support a release because it was undisputed that defendant owed plaintiff $250,000 as a guaranteed salary under the terms of the employment contract. In support of this contention, plaintiff relies on *Upper Avenue National Bank v. First Arlington National Bank*, 81 Ill. App. 3d 208, 212 (1980), for the proposition that the partial payment of an amount undisputedly due does not constitute sufficient consideration for a release. However, that proposition does not apply to this case because, as we have already determined, there was a good-faith basis for a dispute between the parties as to the amount defendant owed plaintiff under the employment contract. Accordingly, the severance offer was sufficient consideration to support any release that was part of the agreement.

Because the offered severance payment was sufficient consideration to support a release, we conclude that plaintiff's acceptance of the offer, as set out in the November 11 letter of agreement, constituted a valid release. Under the terms of this release, plaintiff relinquished his right to sue defendant.

■ Plaintiff next contends that, even if the November 11 letter agreement contained a valid release, the release was not enforceable because defendant did not meet a precondition to the enforcement of the release that was required by the letter agreement. The precondition in the letter agreement was the total payment of plaintiff's 1994 bonus. Plaintiff asserts that the precondition was not met because the calculation of his 1994 bonus did not include an allowance for his vacation pay.

The record does not support plaintiff's claim that his vacation pay should have been part of the calculation of his bonus. Under the terms of the employment contract, plaintiff's bonus was based only on the amount of plaintiff's own trading profits and the amount of the trading profits of the traders plaintiff supervised. Nothing in the employment contract even suggests that plaintiff's vacation pay was intended to be a factor in calculating plaintiff's bonus.

Plaintiff makes no other claims that the bonus amount included in the check he received from defendant was incorrect. We therefore conclude that defendant paid plaintiff his total 1994 bonus. Consequently, the precondition to the enforcement of the release in the November 11 letter agreement was met and the release was enforceable.

■ We have now determined that there was a valid accord and satisfaction between the parties with respect to any guaranteed salary defendant owed plaintiff. We have also determined that there was a valid and enforceable release by which plaintiff relinquished his right to sue defendant. Either the accord and satisfaction alone or

the release alone would have operated to bar plaintiff's suit with respect to his guaranteed salary claim. It follows that the accord and satisfaction in conjunction with the release certainly would have operated to bar plaintiff's suit against defendant with respect to his guaranteed salary claim. For these reasons, we conclude that the trial court did not err when it granted summary judgment in favor of defendant as to plaintiff's claim that defendant owed him part of a guaranteed salary under the employment contract.

Plaintiff next contends that, notwithstanding any accord and satisfaction or release, defendant owes him compensation for vacation pay which he contracted to receive but did not receive. Plaintiff asserts that he is entitled to this vacation pay pursuant to the Wage Payment Act.

■ Plaintiff relies on section 5 of the Wage Payment Act. Section 5 requires an employer to make a final compensation payment to any separated employee no later than the employee's next regular pay day. 820 ILCS 115/5 (West 1996). Section 5 also generally requires an employer to include in the final compensation payment the monetary equivalent of all earned but unused vacation time that the employee was entitled to at the time of his separation. 820 ILCS 115/5 (West 1996).

■ In this case, plaintiff's employment contract with defendant provided that plaintiff was entitled to four weeks of paid vacation. The employment contract did not specify what the time frame was for plaintiff to use this paid vacation. Plaintiff asserts that he was entitled to four weeks of paid vacation per year. Defendant does not dispute that assertion. We will therefore assume that plaintiff was entitled to four weeks of paid vacation per year under the employment contract.

In an affidavit, Ould-Ferhat stated that during 1994 plaintiff received in excess of the vacation benefits due to him. The affidavit also referred to documents showing requests plaintiff made to defendant for time off work. One of these documents, dated May 16, 1994, is entitled "Vacation Request" and shows a request by plaintiff for the use of 23 vacation days for the period from July 25, 1994, through August 24, 1994. The document is signed by plaintiff and shows that plaintiff had zero vacation days remaining to be taken.

Plaintiff does not attempt to rebut Ould-Ferhat's statement in his affidavit regarding plaintiff's receipt of excess vacation time. Rather, plaintiff asserts that his employment compensation had no direct relationship to the amount of hours he worked. Based on this assertion, plaintiff reasons that there was no way for defendant to compensate him for vacation time other than to make a separate payment to him

for his vacation time based on a *pro rata* share of his guaranteed annual minimum salary of $250,000 regardless of how much vacation time he actually took.

Our review of the record reveals no support for plaintiff's assertions. Nothing in the employment contract even suggests that the parties intended plaintiff's vacation pay to be some kind of additional compensation that defendant would owe plaintiff even if plaintiff took all or more of the vacation time that he was entitled to take under the contract. Moreover, plaintiff's argument is undermined by his requests for vacation time. Plaintiff does not explain why he submitted requests to use vacation time if defendant was obliged to pay plaintiff for his vacation time no matter how much time plaintiff took off.

Nor does the language of the Wage Payment Act support plaintiff's position. Section 5 of the Wage Payment Act provides that it applies to vacation time when "an employee resigns or is terminated without having taken all vacation time earned in accordance with" his employment contract. 820 ILCS 115/5 (West 1996). The Wage Protection Act makes no provision for compensation to a separated employee for vacation time when the employee has taken all the vacation time to which he was entitled.

Plaintiff did not file a counteraffidavit or otherwise attempt to rebut defendant's affidavit and exhibits which established that plaintiff took all of the vacation time to which he was entitled under the employment contract. Rather, plaintiff simply made unsupported arguments that he was entitled to be paid for vacation time regardless of how much vacation time he took.

Based on this record, we conclude that plaintiff has failed to present a factual basis that would arguably show that defendant owed plaintiff any compensation for vacation time when plaintiff accepted defendant's offer of severance compensation. Therefore, plaintiff's claim that defendant violated the Wage Payment Act by not including vacation pay in his final compensation fails. Accordingly, the trial court did not err when it granted summary judgment in favor of defendant on this issue.

Based on the foregoing, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and BOWMAN, JJ., concur.