Elizabeth CURRAN, Plaintiff–Appellant,

v.

Ho Sung KWON, also known as Alex Kwon, Revlon International Corporation, Jeremy Foster–Fell, et al., Defendants–Appellees.

No. 97–2713.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1998.

Decided Aug. 20, 1998.

John J. Henely (argued), Chicago, IL, for Plaintiff–Appellant.

Richard P. Campbell (argued), Campbell & DiVencenzo, Chicago, IL, for Defendant–Appellee Kwon.

William P. Richmond, Sidley & Austin, Chicago, IL, Theodore J. Theophilos, Sidley & Austin, New York City, for Defendant–Appellant Revlon International Corporation.

Leonard Ring, Ring & Associates, Oakbrook, IL, for Defendant–Appellee Foster–Fell.

William P. Richmond, David B. Johnson (argued), Sidley & Austin, Chicago, IL, Theodore J. Theophilos, Sidley & Austin, New York City, for Defendant–Appellant Revlon Incorporated.

Before BAUER, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

In this diversity case, Elizabeth Curran ("Curran") sued Ho Sung Kwon ("Kwon"), Jeremy Foster–Fell ("Foster–Fell") and Revlon International Corporation ("Revlon") alleging fraudulent misrepresentation, negligence and false arrest. When the defendants produced a release she had executed, discharging them from any claim she may have against them, she responded that she had signed the release under duress. The district court held that she did not demonstrate duress, however, and granted summary judgment to the defendants. For the reasons explicated below, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

The facts in this case are undisputed.[1] In March 1982, Kwon was infatuated with Elizabeth Curran, a 26 year-old professional model whom he had seen working at a New York nightclub. In vain he attempted to develop a romantic relationship with her. Undaunted, however, with Foster–Fell's help Kwon devised an elaborate plan to win her heart, or at least her interest. They notified Curran of a fictitious modeling contest, supposedly sponsored by Revlon and supervised by Kwon. Curran "won" the New York competition; for the next stage of the nonexistent contest, she flew to Paris, accompanied by Kwon. When Curran arrived in Paris, however, and realized that there was only one hotel room for herself and Kwon, she refused to share the room with him. Kwon agreed to leave the room but asked Curran if he could leave an envelope containing his passport and $1,200 because he did not want to carry so much money with him.

The next morning, March 28, 1982, Curran, hoping to book a flight home, left the hotel with Kwon's envelope and went to the airport. She claims she kept the envelope because Kwon had left it in her care; she used some of the money to pay for her plane ticket back to the United States. When Kwon returned to the hotel room and discovered that his property was gone, however, he contacted the hotel manager, who in turn notified the police. Curran was arrested at the airport and held overnight on a charge of theft.

The next day, March 29, a preliminary hearing was held. At the hearing, Kwon testified that he only wanted his money and passport returned and that he did not want to press charges. Despite his request that charges be dropped, the French prosecutor set a trial for two days later. He did grant

1. Defendant Kwon filed a statement of material undisputed facts in compliance with Local Rule 12(M). Curran did not file a responsive statement of material facts in compliance with Local Rule 12(N). As we discuss further in II.A, because she failed to object to Kwon's 12(M) statement, the uncontested facts set forth in Kwon's statement are deemed admitted. *See Smith on Behalf of Smith v. Severn,* 129 F.3d 419, 425 (7th Cir.1997). We, like the district court, accept Kwon's version of the facts.

Curran a release from custody for the interim days, however. In the meantime, her boyfriend had contacted an attorney and friend in Chicago named Jerrold Morris, who in turn engaged a Paris attorney, Patrick Bernard, to represent Curran. Before the trial she stayed at the home of Dana Haviland, a French attorney practicing with Mr. Bernard. Her father flew to Paris to assist her as well.

At the trial two days later, March 31, Kwon again testified on Curran's behalf. He stated that he did not want Curran to be prosecuted and that he had withdrawn his complaint once he had recovered his passport and money. Curran was acquitted.

The day after Curran's acquittal, April 1, she and her father were in his Paris hotel room when her French lawyer, Bernard, arrived and presented to her a proposed release drawn up as a result of negotiations between Kwon's lawyers and Curran's lawyers.[2] Under the terms of the release, Curran was to be paid $10,260, and Kwon and Revlon in turn were to be released from any claim which might be brought by Curran based on the bogus modeling contest. Curran's father and her Paris lawyer advised her

to accept the offer in the release. After consulting with her Chicago attorney as well, Curran signed the release on April 1 and left Paris. At no time did Kwon contact her concerning the release.

The next day, Kwon tendered the payment of $10,260 by placing it in a specified account, as agreed. However, soon after Curran returned to the United States, she disavowed the release. Her father returned the payment to Kwon's attorney[3] and her Paris attorney refused to deliver the original copy of the signed release.[4]

Almost a year later, Curran filed suit against Kwon, Foster–Fell and Revlon, alleging negligence, fraudulent misrepresentation and false arrest. Kwon filed his motion for summary judgment, claiming that Curran had executed a release of all claims against him. Curran responded that, because she signed the release under duress, the release was voidable by her and therefore did not bar her claim against Kwon.

## B. Judgment of the District Court [5]

On April 12, 1993, the district court granted Kwon's motion for summary judgment on

---

2. According to Kwon's attorney, Ibram Harari, there had been a discussion about obtaining a release from Curran before her trial; Curran had rejected an offer of $1,500. On April 1, 1982, however, she agreed to the amount of $10,260 in exchange for her general release of the defendants from civil liability. The document she and her attorney signed states, in pertinent part:

> I, Elizabeth CURRAN, ("releasor") in consideration of the payment of U.S. $10,260 ... do hereby release and discharge each and all of:
> Mr. HO SUN KWON
> HAMMI COSMETICS COMPANY, a Korean Corporation,
> REVLON INC., a Delaware U.S.A. Corporation
> ... from any and all actions, causes of action, suits, ... claims and demands of every kind or nature ... including, but not limited to, any claim relating directly or indirectly to or arising out of or in connection with any contest allegedly conducted by any of the releasees or any of their respective affiliates or agents, releasor's trip to New York and/or Paris, and anything that occurred in either such place, including without limitation, any of the alleged actions in Paris which led, directly or indirectly, to releasor's detention by the French Police Authority on March 28, 1982.
> . . . .

3. The payment was placed in a certificate of deposit.

4. Following that refusal by Paris attorney Bernard to deliver the release, Kwon's attorney submitted the issue to the Paris Bar Association. The Paris Bar Association determined that the release had been executed and that Mr. Bernard was obligated to deliver the signed release to Kwon's attorney once Kwon had performed his part of the agreement by making the $10,260 payment. The Association ordered Mr. Bernard "in accordance with said undeniable agreement which has now been performed by Mr. HO SUNG KWON to remit the original of this document, as agreed, to our colleague Ibram HARARI," Kwon's attorney. R.354, Rule 12(M) Statement ¶ 31.

5. In April 1985, the district court (Parsons, J.) denied defendants' motions for summary judgment on the ground that there was a genuine issue as to whether Curran signed the release voluntarily or under duress. Prior to that ruling, the only discovery had been the depositions of

> Releasor fully understands the contents of this instrument which has been carefully and fully read by releasor and releasor's counsel.
> R.36, Ex.B.

the ground that the release signed by Curran was valid and enforceable.[6] In its analysis, the court followed Illinois choice-of-law principles and applied the law of France, the jurisdiction where the release was executed. It noted that, under French law, a release of a private tort claim may be made by a "compromise settlement." R.365 at 6. However, if the party consents to the release under duress, or, in French law, "violence," the contract may be rescinded. To establish "violence," the court explained, a party must show "the presence of a threat of considerable and present harm to person or property." *Id.* at 8. The court determined that Curran failed to demonstrate the presence of any threat of harm. In the first place, because she did not file a Local Rule 12(N) statement, the facts of record in the court are those taken from Kwon's uncontested Rule 12(M) statement, which contains no assertions of threats. Nevertheless, even when the district court considered Curran's facts, as asserted in her memoranda and deposition, it concluded that her version of the facts did not establish "violence." Curran reported that she was tired, confused and generally fearful during her stay in Paris; the court found that these claims, if true, did not rise to the requisite threat of considerable and present harm that would force Curran to assent to the release. Curran also claimed that she was afraid she might be prevented from leaving Paris if she did not sign the release; however, noted the court, such an argument lacked any foundation in the record. She had been acquitted the day before she was presented with the release and, according to the court, could not reasonably have believed that her leaving Paris was contingent upon her executing the release. The court further recognized that Curran signed the document after receiving advice, not coercive pressure, from her father and her attorneys. The court concluded that there was no genuine issue of material fact regarding Curran's assent when she signed the release. Because she could not establish "violence," the court held that the release was valid. Therefore it granted summary judgment to Kwon.[7]

## II

## DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment de novo and shall affirm its ruling if the party seeking summary judgment has demonstrated, through its pleadings and the depositions, answers to interrogatories, admissions and affidavits it has filed, that no genuine issue of material fact exists for trial and that the movant is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An appellate court reviewing a grant of summary judgment pursuant to Rule 56 views all the facts in the record and draws all reasonable inferences in favor of the nonmoving party. However, we require the nonmoving party to present more than mere allegations; he must set forth specific facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Smith on Behalf of Smith v. Severn,* 129 F.3d 419, 425 (7th Cir.1997).

In this case, Curran violated Rule 12(N) of the Northern District of Illinois Local Rules by failing to respond to Kwon's statement of uncontested facts which was

Curran, Kwon and Foster–Fell. After that ruling, sixteen additional depositions were taken; they included the depositions of Curran's father, mother, boyfriend, her lawyers and Kwon's lawyers. Other documents were obtained during discovery as well. The record therefore contained substantial additional evidence when the case was reassigned to Judge Nordberg in November 1991 and when Kwon filed his Answer to Curran's Fifth Amended Complaint in January 1992 and his subsequent motion for summary judgment in April 1992.

6. Curran has appealed the district court's grants of summary judgment to Kwon, to Revlon, Inc., and to Foster–Fell. The court's reasoning for granting Kwon's motion for summary judgment, found in its memorandum opinion and order of April 12, 1993, is fully applicable to all the defendants. The parties have not asserted otherwise.

7. *See supra* note 6.

submitted as required by Local Rule 12(M).[8] Rule 12(N) not only requires a response but also informs the opposing party of the repercussions of failure to respond: "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." No. Dist. Ill. Local Gen. R. 12(N)(3)(b). Because Curran failed to submit a responsive Rule 12(N) statement, we have no challenge by her to any of the statements of material facts proffered by Kwon and no additional facts which might support a denial of summary judgment. She therefore is deemed to have conceded the truth of all of Kwon's properly supported factual averments in his Rule 12(M) statement. See Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 412 (7th Cir. 1997). Therefore,

> the court will refuse to consider any facts contradicting the 12(M) statement as not properly before it and will view the 12(M) statement and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. In other words, Rule 12(N) penalizes the nonmoving party by limiting the scope of facts a court may take into account in determining whether a genuine issue of material fact exists and whether "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). It does not, however, alter the manner in which a court evaluates those facts.

Smith, 129 F.3d at 425–26 (citation omitted). As we explained in Midwest Imports, Ltd. v. Coval, 71 F.3d 1311 (7th Cir.1995), our unwavering requirement of strict compliance with Rule 12(N) does not allow the nonmoving party the "prerogative to determine when a rule can be satisfied by other than what the rule requires." Id. at 1317. Curran must suffer the consequences of her default.[9] See Brasic v. Heinemann's Inc., 121 F.3d 281, 284–86 (7th Cir.1997); Giannopoulos, 109 F.3d at 412.

## B. Law of the Case

■ As we mentioned earlier, in 1985 the district court denied summary judgment to the defendants on the ground that there was a material issue of fact as to whether Curran signed the release under duress. Curran asserts that the district court's ruling is the "law of the case." According to Curran, nothing learned during the discovery conducted after that decision has eroded her own testimony that she signed the release under duress.

■ In our view, Curran's position is unfounded both on the law and on the facts of this case. First the law: When the Second Circuit, through the pen of Circuit Judge Hand, considered whether the denial of the defendants' motion for summary judgment "had become 'the law of the case,' and must be accepted thereafter without re-examina-

---

8. The local general rules of the United States District Court for the Northern District of Illinois set forth specific requirements concerning the filing of a motion for summary judgment. The moving party "shall serve and file" affidavits and other materials, a memorandum of law supporting the motion, and "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." No. Dist. Ill. Local Gen. R. 12(M)(3). The party opposing the summary judgment motion "shall serve and file" opposing affidavits and materials, a memorandum of law supporting its opposition to the motion, and

> (3) a concise response to the movant's statement that shall contain:
> (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

> (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

No. Dist. Ill. Local Gen. R. 12(N)(3).

9. We note that Curran first failed to file a statement controverting Mr. Kwon's original Rule 12(M) statement (which, at that time, was still Rule 12(L)), filed January 9, 1989. Kwon's subsequent Rule 12(M) statement, filed April 10, 1992, notified the court of that prior default and, in effect, warned Curran to respond to this statement. She declined again to contest any fact set forth in his statement or to add those facts on which she bases her submissions before this court.

tion," it concluded that "there is no imperative duty to follow the earlier ruling—only the desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs." *Dictograph Prods. Co. v. Sonotone Corp.*, 230 F.2d 131, 135 (2d Cir. 1956). The court pointed out that the "law of the case" was not an inflexible rule; it relied on the Supreme Court's explanation, through Justice Holmes, of the doctrine:

> In the absence of statute the phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power.

*Id.* at 135 (quoting *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)).[10] When a district judge is presented with additional evidence, therefore, he is free to revisit a denial of summary judgment.[11] The case before us is factually similar to one reviewed in the Ninth Circuit more than forty years ago, *Breeland v. Southern Pacific Co.*, 231 F.2d 576 (9th Cir.1955). In that case, the court held that the denial of the first motion for summary judgment by the defendant was not the law of the case and did not bar the allowance of a second motion. It noted that, after the denial of the first motion and the defendant's filing of an answer, "[t]he facts lying at the bases of these defenses were not controverted by any showing in the record below." *Id.* at 579. We hold, therefore, that the denial of summary judgment in this case was not the law of the case and did not bind the court for purposes of later consideration of a summary judgment motion. *See Bethlehem Steel Export Corp. v. Redondo Constr. Corp.*, 140 F.3d 319, 321 (1st Cir.1998) (holding that, in that case, the denial of summary judgment motions did not constitute the law of the case and did not

preclude any reconsideration of an issue already settled); *Lovett v. General Motors Corp.*, 975 F.2d 518, 522 (8th Cir.1992) (concluding that the court's rulings on motions to dismiss and for summary judgment were not final judgments).

We also conclude that Curran's claim that none of the later discovery material eroded her claim of duress is factually without justification. Our review of the record leads us to a quite different conclusion. The extensive discovery conducted after 1985 added depositions from virtually all the individuals involved in the case, French court records concerning her arrest, transcripts from the court hearings and other discovery material. In all, this evidence created a record much more developed than the one reviewed in 1985. In addition, Curran's failure to submit a Rule 12(N) statement meant that she had admitted these crucial facts in Kwon's 12(M) statement:

> 26. *After* her acquittal, Mr. Bernard presented the Release to Ms. Curran in the presence of her father at the hotel where she and her father were staying.
>
> 27. Both Ms. Curran and her father read the Release. Ms. Curran consulted her Paris attorney, Mr. Bernard, her Chicago attorney, Mr. Morris, and her father concerning whether she should settle and execute the Release. All advised her to sign.
>
> 28. Ms. Curran signed the Release in Paris, France, on April 1, 1982, 24 hours after her acquittal, in the presence of her father and her Paris lawyer, Mr. Bernard. Bernard also signed.
>
> 29. At the time Ms. Curran executed the Release, she knew she had been acquitted and was free, and further knew she was free to leave Paris.
>
> 30. Ms. Curran never discussed settlement or the Release with Mr. Kwon.

---

**10.** Spelling and punctuation are according to the original text of *Messinger*. There are deviations in *Dictograph Products Co.* and in the Westlaw version.

**11.** *See* 11 *Moore's Federal Practice* § 56.10[7] (3d ed.1998) (stating that, although a denial of summary judgment is generally treated as law of the case, a subsequent summary judgment motion may be considered if it raises different issues,

different grounds, additional facts or precedent); *see also* 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2718 (1998) ("[I]t is within the trial court's discretion to deny a motion for summary judgment without prejudice to its being renewed at a later time and the court may grant a renewed motion upon a showing of good cause.").

31. The Paris Bar Association ordered Ms. Curran's Paris lawyer, Mr. Bernard, to turn over the executed Release to Mr. Kwon's Paris attorney, Mr. Harari.

R.354 at 506 (citations to depositions omitted).

Once this extensive factual background was before the court, it had good reason to reconsider Curran's complaint in light of that record. We hold that the district court in no way abused its discretion in considering the defendants' renewed motions for summary judgment.

## C. The Validity of the Release

We shall consider now the substance of the district court's decision that the release was not signed under duress and was not voidable. We begin by determining which law applied to the issue.

■ A district court exercising jurisdiction because of the diversity of citizenship of the parties must apply the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). At stake here is the validity of the release executed by Curran. The release is a contractual arrangement and is governed by the choice of law rules governing contracts. In the earlier years of this century, Illinois followed, as did most American jurisdictions, the rule of *lex loci contractus*—the law of the place of the making of the contract—to determine the validity of a contract.[12] Therefore, in *Woodbury v. United States Casualty Co.*, 284 Ill. 227, 120 N.E. 8 (1918), the Supreme Court of Illinois stated that releases were governed by the law of the place where they were made. *See id.* at 12. Indeed, we acknowledged that this approach was the state of the law during that period. *See Frazier v. Sims Motor Transp. Lines, Inc.*, 196 F.2d 914, 917 (7th Cir.1952).

■ As we stated in *Palmer v. Beverly Enterprises*, 823 F.2d 1105, 1107 (7th Cir. 1987), however, it is now clear that Illinois has abandoned the *lex loci contractus* rule in favor of selecting the jurisdiction with the most significant contacts with the transaction and the parties. *See* Restatement (Second) of Conflict of Laws § 188 (1971). This approach requires that we consider the place of contracting, the place of the negotiation of the contract, the place of performance, the location of the subject matter of the contract and the domicile and nationality of the parties. These factors are to be considered according to their relative importance with respect to the particular issue at stake in the litigation. *See id.* Here, that "particular issue" is whether the release is void because the circumstances surrounding its execution indicate that it was not freely given.

■ The factors enumerated in § 188 must also be evaluated in light of the considerations enumerated in § 6 of the Restatement (Second): the needs of the interstate and international systems, the relevant policies of the forum, the relevant interests of other jurisdictions with respect to the particular issue, the protection of justified expectations, the basic policies underlying the field of law, the need for certainty, predictability, and uniformity of result, and the ease with which the applicable law can be determined and applied. *See* Restatement (Second) of Conflict of Laws § 6.

■ We believe that the district court's decision to apply French law to determine the validity of the release is appropriate under the Restatement (Second). The precise focus of the judicial inquiry must be on the circumstances surrounding Curran's execution of the release. These circumstances occurred in France, which is also the locale in which many of the acts upon which she bases the underlying civil complaint occurred. Finally, a French criminal proceeding is implicated in the transaction and, at the time she

---

12. Illinois law uniformly treats a release as a contract governed by contract law. *See Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill.2d 440, 163 Ill.Dec. 510, 581 N.E.2d 664, 667 (1991). Illinois courts define a release as "a contract whereby one party abandons claims against another, and its interpretation is gov-

erned by the principles that govern contract law." *Johnson v. Maki & Assocs.*, 289 Ill.App.3d 1023, 225 Ill.Dec. 119, 682 N.E.2d 1196, 1198 (1997); *see also Koules v. Euro–American Arbitrage, Inc.*, 293 Ill.App.3d 823, 228 Ill.Dec. 539, 689 N.E.2d 411, 414 (1998).

executed the release, she was advised by a member of the Paris bar. We think that Illinois would recognize the superior interest of France in applying the policies that animate its law to the determination of whether the document was executed freely. *See Faloona by Fredrickson v. Hustler Magazine,* 799 F.2d 1000, 1003 (5th Cir.1986) (holding that, under § 188, the law of the place of the execution of the release governed), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987).

 Curran makes no claim that she can meet the high standard of proof required under French law to prove the "violence" that would justify vitiating the contract. Nor, assuming Illinois law did apply, do we believe that she could show the type of coercion contemplated by the governing Illinois cases. *See Kaplan v. Kaplan,* 25 Ill.2d 181, 182 N.E.2d 706, 709 (1962) (defining duress as "a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will, and it may be conceded that a contract executed under duress is voidable"). Put simply, she cannot, on this record, demonstrate that her execution of the release was not the product of her free will. As the district court noted, Curran had endured some difficult circumstances in the days before the execution of the release. Nevertheless, it is undisputed that, at the time she executed the document, she had been exonerated of any criminal charges under French law and had been assured that she was free to leave France. The claim that her freedom was contingent on her signing the release is simply not supported by the record. Indeed, she had rejected a settlement offer prior to the disposition of those charges. Moreover, at the time that she executed the release, she had the advice of both her French and American counsel and had familial support through the presence of her father. Under these circumstances, the record simply would not support a determination by the trier of fact that she executed the release under duress. She was not "bereft of the quality of mind essential to the making of a contract." *Kaplan,* 182 N.E.2d at 710; *see also Fabert Motors, Inc. v. Ford Motor Co.,* 355 F.2d 888, 891 (7th Cir.) (refusing to invalidate a release in the face of duress claims where the parties have had ready access to counsel), *cert. denied,* 384 U.S. 939, 86 S.Ct. 1462, 16 L.Ed.2d 539 (1966).

### Conclusion

The district court did not abuse its discretion when it determined that it was not bound by the law of the case doctrine from reconsidering whether summary judgment ought to have been granted to the defendants. The record had been significantly augmented after the earlier denial of summary judgment. With respect to the choice of applicable law to govern the issue of the validity of the release, the Restatement (Second) of Conflict of Laws is the prevailing standard under Illinois law. Applying that standard, French law governs the validity of the release executed by Curran. In any event, even if Illinois law were applied, this record would not permit a trier of fact to determine that she had acted under duress when she signed the release. The district court properly granted summary judgment. Accordingly, its judgment is affirmed.

AFFIRMED.