No. 4--97--0842

IN THE 

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1998

COLLECTION PROFESSIONALS, ) Appeal from the Circuit Court

INC., ) for the 10th Judicial Circuit 

 ) Putnam County, Illinois 

Plaintiff-Appellee, )

)

v. ) 

) 

ROBERT LOGAN, ) 

)

Defendant-Appellant, ) No. 96--LM--5

)

(Mary Logan, )

Defendant, )

) Honorable

Putnam County Bank, ) Robert J. Cashen, 

Garnishee.) ) Judge Presiding

PRESIDING JUSTICE HOMER delivered the opinion of the court: 

Judgment-debtor, Robert Logan, appeals the trial court's decision to permit execution of a nonwage garnishment against his accounts with Putnam County Bank in favor of judgment-creditor, Collection Professionals, Inc.  Robert contends that an agreed order executed by Collection Professionals and his cojudgment-debtor constituted an accord and satisfaction of the entire judgment which precluded the garnishment of his accounts.  He also challenges the constitutionality of the nonwage garnishment statute (735 ILCS 5/12--701 
et seq.
 (West 1996)).  Following our review, we affirm.

FACTS

Collection Professionals sued Robert Logan and his former wife, Mary Logan, to collect on various outstanding medical bills incurred during their marriage.  When Robert and Mary divorced in 1996, they agreed that Mary would assume responsibility for paying those bills as a part of the settlement; although, Robert acknowledges that he remained jointly and severally liable for the debt pursuant to section 15 of the Rights of Married Persons Act (750 ILCS 65/15 (West 1996)).

On June 6, 1996, Collection Professionals obtained judgment in the amount of $4,756.30 plus costs against Robert and Mary.  Judgment against Robert was entered by default.  Judgment against Mary was entered by consent in a separate order which established Mary's monthly payment schedule for the satisfaction of the judgment, costs, and statutory interest.  The order provided that if Mary failed to make payments as scheduled, Collection Professionals would file other postjudgment enforce­ment action, including garnishment.

Because Mary failed to meet the payment schedule in July 1996, Collection Professionals commenced nonwage garnishment proceedings against her naming Putnam County Bank (the Bank) as garnishee.  Collection Professionals discovered that the Bank held no garnishable assets of Mary because her only account with the Bank was an overdrawn checking account.  Despite Mary's default, it appears from the record that Mary subse­quently made an indeterminate number of payments toward the judg­ment. 

In March 1997, Collection Professionals instigated the instant nonwage garnishment action against Robert's accounts to collect $3,575.70, the amount remaining due on judgment including costs and interest.  The Bank, again named as garnishee, declared that it held deposit accounts totalling $15,572.86 belonging to Robert. 

Robert filed objections to the garnishment and a motion to quash arguing:  (1) Collection Professionals was barred from enforcing the judgment against him because its agreement with Mary constituted an accord and satisfaction of the judgment, or alternatively, a compromise and settlement, and (2) the nonwage garnishment statute is unconstitutional because it failed to provide him with pre-seizure notice.  After a hearing, the trial court denied Robert's objections and motion to quash.  The court also denied Robert's subsequent motion to stay the garnishment pending appeal.  The court ordered the Bank to turn over $3,084.00 from Robert's accounts which represented the judgment balance.  Robert appeals.

                     

ANALYSIS

I. Propriety of the Nonwage Garnishment

The instant appeal arises out of a garnishment proceeding which is a purely statutory remedy for the enforcement of a judgment.  
In re Marriage of Schomburg
, 269 Ill. App. 3d 13, 17, 645 N.E.2d 1005, 1007 (1995).  To maintain a garnishment action, there must be a valid judgment and the garnishor must meet all of the requirements set forth in the garnishment statute.  
Seidmon v. Harris
, 172 Ill. App. 3d 352, 356-57, 526 N.E.2d 543, 545 (1988).  

Robert does not dispute that Collection Professionals obtained a valid default judgment against him.  Nor does he dispute that Collection Professionals followed the procedures set forth in the nonwage garnishment statute (735 ILCS 5/12--701 
et
 
seq.
 (West 1996)).  He con­tends, however, that the garnishment of his accounts was improper because the agreed order between Mary and Collection Professionals constituted an accord and satisfac­tion of the entire obligation.  He argues that Collection Professionals was precluded from taking any enforce­ment action against him because Mary, his cojudgment-debtor, had already satisfied the obligation by agreeing to pay it in full.

Because there is no dispute as to the facts upon which Robert's claim of accord and satisfaction is based, the issue presented to this court raises a question of law.  See 
A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.
, 243 Ill. App. 3d 905, 912, 611 N.E.2d 619, 624 (1993).  As with all questions of law, we will conduct 
de
 
novo
 review.  
Joel R. v. Board of Education of Mannheim School District 83
, 292 Ill. App. 3d 607, 613, 686 N.E.2d 650, 655 (1997).  

"Accord and satisfaction" is a method of discharging a claim whereby the parties agree to give and accept something other than that which is due in settlement of a claim.  1 Am. Jur. 2d 
Accord & Satisfaction
 §1 (1994).  The accord is the agreement settling the existing dispute which presupposes a disagreement as to the amount due, and the satisfaction is the execution of the accord.  
Professional Therapy Services, Inc. v. Signature Corp.
, 223 Ill. App. 3d 902, 916, 585 N.E.2d 1291, 1300 (1992).  A valid accord and satisfaction completely discharges the debtor's existing duties and constitutes a defense to any attempt to enforce claims based on those duties.  1 Am. Jur. 2d 
Accord & Satisfaction
 §1 (1994).  Further, an accord and satisfaction between the creditor and one debtor will discharge all other jointly and severally liable debtors from further liabil­i­ty on the claim.  1 Am. Jur. 2d 
Accord & Satisfaction
 §12 (1994).  

Ordinarily, an accord and satisfaction requires:  (1) a 
bona
 
fide
 dispute; (2) an unliquidated claim; (3) consideration; and (4) a shared and mutual intent to compromise the claim.  
Grove v. Winter
, 197 Ill. App. 3d 406, 413, 554 N.E.2d 722, 726 (1990).  The instant facts do not support Robert's claim of accord and satisfaction.  The record reveals that 
neither Robert nor Mary disputed the amount claimed in the complaint.  The claim was certain and not unliquidated.  Evidence of consideration and mutual intent to compromise the claim is lacking.

Nevertheless, Robert points out that an undisputed claim may, in some instances, be fulfilled through accord and satisfaction.  See 1 Am. Jur. 2d 
Accord & Satisfaction
 §6 (1994).  He argues that the agreed order between Collection Professionals and Mary constituted an executory accord which was fully satisfied by Mary's promise to pay the undisputed claim according to a payment plan.  We disagree.

An "executory accord" is an agreement to accept at some future time a stipulated performance as satisfaction of an obliga­tion.  Black's Law Dictionary 570 (6th ed. 1990).  However, an executory accord is unenforceable and will not bar en­forcement of the original obligation unless:  (1) the creditor has clearly accepted the new promise of future performance, itself, and not the ultimate performance of it, as satisfaction, and (2) the new promise is based upon new consideration.  1 Am. Jur. 2d 
Accord & Satisfaction
 §51 (1994).

In this case there is nothing in the record demonstrating that Collection Professionals intended to accept the payment plan with Mary as satisfaction of the entire joint obligation.  To the contrary, Collection Professionals sought and obtained judgment against 
both
 Mary and Robert.  The judgment against Robert provided that "execution may issue;" and although Mary was granted the opportunity to fulfill her obligation over time, Collection Professionals expressly retained the right to enforce the judgment through alternative methods of enforcement.  Further, there is nothing in the record to suggest that any new consideration was tendered in conjunction with the consent judgment.  Therefore, because there was no enforceable executory accord and no satisfaction of this joint and several obligation, the fact that Collection Professionals assented to a payment plan for M­ary in no way sus­pend­ed Robert­'s joint liabili­ty for the obligation under the default judgment.

Defendant argues, in the alternative, that the agreed order constituted a compromise and settlement of the entire obligation.  Again, we dis­agree.  

A compromise is an agreement to terminate, by means of mutual concessions, a claim which is disputed in good faith or unliqui­dated.  15A Am. Jur. 2d 
Compromise & Settlement
 §1 (1976).  "It involves an agreement that a substituted performance is acceptable instead of what was previously claimed to be due; thus, each party yields something and agrees to eliminate both the hope of gaining as much as he previously claimed and the risk of losing as much as the other party preciously claimed."  15A Am. Jur. 2d 
Compromise & Settlement
 §1 (1976).  There is no compromise where, as in the instant case, the claim is undisputed and no concessions are made by the judgment-creditor.  Although the agreed order did allow Mary to pay the judgment over time, she was required to pay statutory interest, and Collection Professionals expressly retained its right to enforce the judgment through alternative means. 

We also find unpersuasive Robert's argument that Collection Professionals was improperly seeking a double recovery by enforcing the default judgment against him.  There is nothing in the record to suggest that Collection Professionals sought or received payment in excess of the judgment from the defendants. 

For the forgoing reasons, we do not find that the consent judgment entered against Mary precluded Collection Professionals from seeking enforcement of the default judgment against Robert.

II. Constitutional Challenge

Robert also challenges the constitutionality of Illinois' nonwage garnishment statute.  Specifically, he contends that the statute violates due process by failing to provide a judgment-debtor with notice and an opportunity to be heard on defenses to the garnishment prior to service of the summons on the garnishee and the automatic freezing of his assets.  For support, he relies upon two cases which held a prior version of the statute unconstitutional.  See 
E.J. McKernan Co. v. Gregory
, 268 Ill. App. 3d 383, 643 N.E.2d 1370 (1994); 
Jacobson v. Johnson
, 798 F. Supp. 500 (C.D. Ill. 1991).  Although he acknowledges that the statute has since been amended significantly, he asserts that the amendments do not resolve the constitutional infirmity because due process requires that judgment debtors be given notice and an opportunity to be heard prior to seizure of their assets.

Until now, the current version of Illinois' nonwage garnishment statute has not been the subject of a constitutional challenge in a reported state or federal court decision.  Because the cases relied upon by Robert involved a prior version of Illinois' statute, we find them unhelpful to our analysis.  Therefore, we consider this challenge a matter of first impression.  It is well established that all statutes are presumed to be constitutional, and the party challenging a statute has the burden of clearly proving its invalidity.  
Rehg v. Illinois Department of Revenue
, 152 Ill. 2d 504, 511-12, 605 N.E.2d 525, 529 (1992). 

Contrary to Robert's contention, due process does not require that a judgment-debtor be given pre-seizure notice and opportunity to be heard in postjudgment enforcement actions.  See 
Endicott-Johnson Corp. v. Encyclopedia Press, Inc.
, 266 U.S. 285, 288-89, 69 L. Ed. 288, ___, 45 S. Ct. 61, 62-3 (1924); 
McCahey v. L.P. Investors
, 774 F.2d 543, 550 (2d Cir. 1985); 
Dionne v. Bouley
, 757 F.2d 1344, 1352 (1st Cir. 1985); 
Brown v. Liberty Loan Corp.
, 539 F.2d 1355, 1363 (5th Cir. 1976); 
Betts v. Coltes
, 467 F. Supp. 544, 546 (D. Haw. 1979); see also 
Jacobson
, 798 F. Supp. at 505.  In 
McCahey
, the court ex­plained:

"[Pre-seizure notice and opportunity for hearing] for debtors is not constitu­tionally required even in the case of pre-judgment attachments, when liability has not been determined.  
A
 
fortiori
, it can hardly be required where the creditor's claim has been finally confirmed by a court, and where the risk that the debtor will conceal assets is stronger than in the pre-judgment context."  
McCahey
, 774 F.2d at 550. 

To determine whether a post-judgment garnishment statute satisfies due process requirements, most courts have adopted the balancing test set forth in 
Mathews v. Eldridge
, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).  This test requires consideration of the following factors:  (1) the private interest that will be affected by the official action;  (2) the risk of erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and  (3) the government's interest, including the fiscal and adminis­trative burdens that the additional safeguards or substitute procedures would entail.  
Mathews
, 424 U.S. at 334-35, 47 L. Ed. 2d at 33, 96 S. Ct. at 902-903.

Courts that have implemented this balanc­ing test agree that post-judgment remedy provisions, such as the instant garnishment statute, satisfy due process as long as they provide:  (1) notice to judg­ment debtors that their property has been seized; (2) notice to judgment debtors of exemptions to which they may be entitled; and (3) a prompt opportunity for judgment debtors to challenge the seizure and asset exemp­tions.  See 
McCahey
, 774 F.2d at 549.  After reviewing the subject statute, we conclude that it meets these essential re­quire­ments.

First, the statute provides prompt notice to the judg­ment debtor that his proper­ty has been seized by requiring that a copy of the summons and notice of gar­nish­ment be mailed to the judgment-debtor within two business days of service upon the garnishee.  735 ILCS 5/12--705(b) (West 1996).  A garnishment order cannot be entered unless the certificate of mailing to the judgment-debtor is filed with the court.  735 ILCS 5/12--711(e) (West 1996).

Second, the statute re­quires the judg­ment-debtor be informed of the types of property that may be claimed as exempt from garnishment.  735 ILCS 5/12--705(a),(b) (West 1996).  It also requires that the judgment-debtor be informed of his right to request a hearing to dispute the garnish­ment or declare an exemption.  735 ILCS 5/12--705(a),(b) (West 1996).

Finally, the statute provides the prompt opportunity for judgment-debtors to challenge the seizure and assert exemp­tions.  Although the garnishee is required to freeze any of the debtor's non-exempt assets in its possession to the extent of the amount due on the judgment and costs, the assets may not be turned over to the creditor until the court orders execution of the garnishment.  735 ILCS 5/12--707(a) (West 1996).  At any time on or before the return date of the summons, the judgment-debtor may request a hearing to dispute the gar­nish­ment or seek exemptions for certain money or property.  735 ILCS 5/12--711(b) (West 1996).  The sum­mons, itself, must be return­able between 21 and 30 days after the date of its issu­ance (735 ILCS 5/12--705(a) (West 1996)); therefore, judgment-debtors are afforded the opportu­nity to request a prompt hearing.

We find that these procedures properly balance the divergent interests of the government, the creditor, and the debtor.  The credi­tor's interest in an expedient and inexpensive mecha­nism for collecting on judgments is fulfilled; and the ability to freeze the debtor's assets eliminates the risk that the debtor may attempt to avoid the judgment by concealing or transferring assets.  In turn, the debtor's interests in pro­tecting his property and asserting exemptions are fulfilled by the opportunity for a prompt hearing prior to execution of the garnishment.  This balance promotes the government's dual interests of providing an efficient mechanism for enforcement of judgments and ensur­ing due process of law for judgment-debtors.

We reject Robert's contention that because his purported defense of accord and satisfaction did not arise until after the underlying action was completed, it was a violation of due process to not give him the opportunity to present the defense prior to the seizure of his assets.  However, the statute provided Robert the prompt opportunity to present his postjudgment defenses prior to execution of the garnishment order.  Accordingly, we hold that the nonwage garnishment statute afforded Robert all the procedural due process protection required under the constitution. 

  

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Putnam County is affirmed.

Judgment affirmed.

HOLDRIDGE and BRESLIN, JJ., concur.