**BEST BUY CO., INC. a Minnesota corporation, and Best Buy Stores, L.P., a Delaware Limited Partnership, Plaintiffs,**

v.

**The HARLEM–IRVING COMPANIES, INC., an Illinois corporation, Defendant.**

#### No. 98 C 926

United States District Court, N.D. Illinois, Eastern Division.

June 3, 1999.

Mark Nicholas Kevin A. Shaw, Senak, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for Best Buy Co., Inc.

Mark Nicholas Senak, Robins, Kaplan, Miller & Ciresi, Chicago, IL, Mark D. Wisser, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Best Buy Stores.

Daniel Steven Mathless, Law Office of Daniel S. Mathless, Chicago, IL, for Harlem–Irving Companies, Inc.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Pending is Defendant The Harlem–Irving Companies, Inc's. ("Harlem–Irving") Motion for Summary Judgment, which requests a finding of partial non-liability under Federal Rule of Civil Procedure 56(d). For the reasons set forth below, the Motion is denied, with the exception of an accord and satisfaction issue discussed herein.

## FACTUAL BACKGROUND[1]

Defendant Harlem–Irving operates an enclosed shopping mall in the Chicagoland area. Best Buy Company, Inc. ("Best Buy") is one of the tenants in that shopping mall. Best Buy is a leading retailer of consumer electronics, home appliances, computer software, music and video products. In late 1992, the parties signed a lease, and a rider/addendum. The lease required Harlem–Irving to deliver possession to Best Buy on or before December 15, 1992. However, the term of the lease did not begin until March 1, 1993. The lease term expires on February 29, 2008.[2]

Under the lease, Best Buy is required to pay a proportionate share of common area maintenance ("CAM") charges. CAM charges are the costs associated with maintaining those portions of the mall which are not under the exclusive possession of any particular tenant (i.e. common areas). Examples of common areas include (internal or external) courtyards, parking lots, driveways, walkways, lobbies and landscape. Harlem–Irving assesses a monthly charge for additional rent against Best Buy and other tenants based on estimated CAM expenses, and each month, Best Buy pays one-twelfth of its estimated proportionate share of CAM expenses, subject to reconciliation of overpayments or underpayments after the end of the calendar year. Of a total of 540,596 square feet of gross leasable area, Best Buy leases 30,656 square feet. Best Buy's proportionate share of CAM charges is therefore about 6%. The lease excludes from Best Buy's share of CAM charges **"office overhead, wages and salaries."** Harlem–Irving attempted to charge Best Buy for all non-office wages and salaries, including management personnel. Best Buy objected and announced its view of the "office overhead, wages and salaries" exclusion clause as excluding from CAM not merely office wages and office salaries, but rather all wages and all salaries. Harlem–Irving's position is that the exclusion for "office overhead, wages and salaries" is

---

1. The court has taken these facts from Defendant's 12(M) Statement and Plaintiff's 12(N) Statement.

2. Article 25 of the lease states, in pertinent part, that; "The laws of the State of Illinois shall govern validity, performance and enforcement of this Lease." Neither party disputes the validity of this provision.

an exclusion only for "office overhead, [office] wages and [office] salaries."

The lease also requires Best Buy to pay Harlem–Irving an additional administrative fee equal to seven (7%) percent of CAM charges. The lease, however, provides that Harlem–Irving should not assess the 7% fee against **"real estate taxes and insurance."** Best Buy reads this clause as an exclusion not merely for real estate insurance, but rather for all insurance. Harlem–Irving's position is that the exclusion pertains to "real estate taxes and [real estate] insurance."

Under the lease, repair of the parking lot is a CAM charge beginning in the sixth year after the rent commencement date. Repair of the roof is not a CAM charge, but is the sole responsibility of Harlem–Irving. Part of the surface of the parking deck also serves as part of the roof of the shopping mall. Best Buy has challenged charges for repair of the spalling parking deck.[3]

Best Buy is challenging too, Harlem–Irving's assessment of CAM charges for training expenses, licenses and permits.

On July 26, 1995, Best Buy issued a protest letter disputing a variety of CAM charges. In pertinent part, the letter stated that management salaries should not be included in CAM charges because the lease "specifically excludes '. . . wages and salaries. . . .'" The letter also complained about parking ramp expansion joint replacement, accounting fees, security/maintenance office supplies and overhead, engineering and architectural fees, snow-melting machine, deck repair and reconstruction and audit rights. This letter did not complain about licenses, training expenses, permits or the inclusion of workers' compensation insurance premiums. By August 7, 1995, the parties reached a compromise agreement on the categories which Best Buy had protested. The agreement was for the amounts due

in 1993, and it was entered into without prejudice to Best Buy's rights under the lease. The parties continue to be at odds over CAM charges assessed by Harlem–Irving for all years after the compromise.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 920 (7th Cir.1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National–Louis Univ.,* 137 F.3d 962, 1998 WL 81458, at *2 (7th Cir. Feb.27, 1998). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also LINC,* 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505, or by "some metaphysical doubt as to the material facts,"

---

**3.** Although, as can be seen, Best Buy's lawsuit challenges four categories of CAM charges, the overwhelming majority of the disputed

money falls into the first category—wages and salaries of non-office mall personnel (such as security and maintenance employees).

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## II. AMBIGUOUS LANGUAGE IN THE LEASE AND THE DOCTRINE OF *EJUSDEM GENERIS*

The main disputed clause in the lease excludes from CAM "office overhead, wages and salaries." That phrase was inserted by Best Buy's attorney James Istas pursuant to negotiations between counsel for both sides. Because both sides participated to an apparently equal degree in the final drafting of the lease, its language will not be construed strictly against either party. *Meade v. Kubinski*, 277 Ill.App.3d 1014, 1020, 214 Ill.Dec. 733, 661 N.E.2d 1178, 1183 (1996).

Harlem–Irving relies on the doctrine of *ejusdem generis* to persuade this court to, as a matter of law, read the exclusionary phrase "office overhead, wages and salaries" as "office overhead, [office] wages and [office] salaries." Under the same doctrine, Harlem–Irving argues that the exclusionary phrase "real estate taxes and insurance" means "real estate taxes and [real estate] insurance." Best Buy disagrees with such an interpretation.

▪ "The rule of *ejusdem generis*, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is an uncertainty." *Gooch v. United States*, 297 U.S. 124, 128, 56 S.Ct. 395, 397, 80 L.Ed. 522 (1936). "Under the principle of *ejusdem generis*, when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Norfolk & Western Railway Co. v. American Train Dipatchers*, 499 U.S. 117, 129, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991).

▪ Best Buy has presented two arguments as to why the doctrine of *ejusdem generis* does not apply to the lease language in issue. First of all, Best Buy argues that the complete list of CAM exclusions in the subject lease is much longer, including the following items: capital improvements or replacements, ground rent, interest, debt service, insurance, depreciation, amortization, real estate taxes or assessments, office overhead, wages and salaries. Best Buy argues that each item on this list is separate and distinct, such that there is no textual basis to assume that wages and salaries are not distinct items, equal in importance to all of the other enumerated items. (*See* Pl.Resp. at 10.) Second, Best Buy argues, somewhat aside from the particulars of *ejusdem generis*, that it is a basic rule of punctuation that commas are used to set off items in a series, with or without a comma before the conjunction preceding the last item on the list. (*Id.* at 10.) Thus, Best Buy maintains, under ordinary rules of punctuation, the phrase "office overhead," "wages" and "salaries" identifies each item as separate and independent on the list of CAM exclusions. (*Id.* at 10.) To achieve Harlem–Irving's result, it is argued, the list should have therefore provided "*and* office overhead, wages and salaries," which would have made it clear that office modified overhead, wages and salaries. (*Id.* at 10.)

Application of the doctrine of *ejusdem generis* is dependent upon whether or not the term "office overhead" is separate and distinct from the terms "wages" and "salaries." Each party has a different interpretation of the meaning of these lease terms, and the language is certainly capable of being read both ways. Either party's interpretation would entitle such party to prevail on the disputed CAM charges. As such, there exists a genuine issue of material fact which precludes this court from granting summary judgment based on the doctrine of *ejusdem generis*.[4]

### III. BEST BUY'S ALLEGED FAILURE TO MAKE A TIMELY PROTEST

■ Harlem–Irving has alleged that it submitted to Best Buy, CAM statements which specifically listed the categories about which Best Buy is now complaining, and that except for the spalling deck, Best Buy's first protest of the inclusion of these categories was not until October, 1997—more than four years after Best Buy started making CAM payments. (*See* Def. Mot. at 7; Def. 12(M), ¶¶ 78–83.) Harlem–Irving's argument is that Best Buy's alleged failure to protest other CAM charges which are not part of this lawsuit, coupled with Best Buy's silence on the inclusion of those categories which are now the subject of this lawsuit, shows that Best Buy itself believed the categories at issue were properly included within CAM. Specifically, Harlem–Irving argues that Best Buy sent a memo to Harlem–Irving on May 25, 1995, in which Best Buy sought greater specificity (such as what services are provided, how many hours and the like). However, Best Buy's memo did not assert that the lease somehow excludes these categories of non-office salaries. (*See* Def. 12(M), ¶¶ 54, 56.)

In addition, Harlem–Irving contends that because Best Buy was aware that it was paying CAM charges for the categories of non-office wages and salaries, administrative fee or workers compensation, or the like, Best Buy's conduct renders immaterial, any ambiguity in the lease language.

Best Buy maintains, however, that it objected to year-end reconciliations, as contemplated by the lease, which provides that "unless disputed," Best Buy shall pay any year-end CAM reconciliation balance within 30 days of being invoiced. (*See* Pl. 12(N), ¶ 48; Pl.Resp. at 7.) During the

year(s), Best Buy states it merely was making monthly "estimated" payments without waiver of objections. Furthermore, Best Buy disagrees with Harlem–Irving's reading of its memo; specifically, nowhere therein did Best Buy accept wages and salaries as valid CAM charges, and Best Buy objects to Harlem–Irving's conclusion that by seeking greater specificity on the salaries for maintenance and security employees, Best Buy was thus conceding that these were valid CAM categories.

In view of the foregoing, a genuine issue of material fact exists and it cannot be said as a matter of law that Defendant in entitled to summary judgment based on an alleged failure of Best Buy to make a timely protest.

### IV. THE "MEND THE HOLD" DOCTRINE

■ " 'Mend the hold' is a common law doctrine that limits the rights of a party to a contract suit to change his or her litigating position." *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362 (7th Cir.1990). The doctrine, which is in force in Illinois, has been interpreted to mean that "a party to a contract cannot, at least after the pleadings are complete, repudiate a position taken in the course of litigation over the contract." *Horwitz–Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1251 (7th Cir.1996). *See also Israel v. National Canada Corp.*, 276 Ill.App.3d 454, 658 N.E.2d 1184, 1191–92, 213 Ill.Dec. 163, 170–71 (1995); *Delaney v. Marchon, Inc.*, 254 Ill.App.3d 933, 194 Ill.Dec. 128, 133, 627 N.E.2d 244, 249 (1993).

■ Harlem–Irving argues that from 1993 until late 1997, Best Buy protested a number of CAM issues, but not the inclusion of non-office wages and salaries, workers compensation within the administrative fee or training, licenses or permits.

---

4. This same conclusion, for similar reasons, applies to the "real estate taxes and insur-

ance" lease phrase in dispute.

Therefore, Harlem–Irving contends that except for the spalling deck issue, Best Buy's lawsuit is barred by the "mend the hold" doctrine. (*See* Def. Mot. at 9.)

Best Buy, on the other hand, argues that there is no controlling authority for the notion that the doctrine applies outside the litigation context, and that the doctrine has no application in this case because Best Buy never changed its position during the litigation. (*See* Pl.Resp. at 11.)

"The reach of the 'mend the hold' doctrine is uncertain. The language of many of the cases, including those in the Illinois Appellate Court ... is consistent with the view that the doctrine only bars a contract party from changing his position *in litigation*." *Harbor Ins. Co.*, 922 F.2d at 364 (emphasis added). The court went on to say that:

> [i]f "mend the hold" is viewed procedurally, as a rule somehow limited to litigation, it may cross the line that separates "substance" from "procedure" ... by rigidifying the system of pleading that the Federal Rules of Civil Procedure seek to make supple. Those rules are designed not to freeze parties in the positions they take in their initial pleadings. The pleadings kick off a course of pretrial discovery expected to result in modifications in the parties' positions, which often do not crystalize until the filing of the pretrial order, sometimes on the very eve of trial.... The "mend the hold" doctrine, procedurally viewed, embodies an antithetical conception of the litigation process, one in which a party is expected to have all the pins in perfect order when he files his pleading.

*Id.* at 364. The court did note that:

> [o]n the other hand, the two decisions by the Supreme Court of Illinois that discuss the doctrine do not tie it to the litigation context at all. They describe it as a doctrine that estops a contract party to change the ground on which he has refused to perform the contract, whether or not it was a ground stated in the pleading, or otherwise in the course

of litigation. An argument for confining the doctrine in this fashion is that otherwise it would step on the toes of judicial estoppel. That doctrine requires separate suits; mend the hold does not. So, interpreted as a procedural doctrine rather than a contractual one, mend the hold would make judicial estoppel superfluous. Yet, the Illinois courts believe they can coexist happily.

*Id.* at 364. *See Rural Electric Convenience Cooperative Co. v. Illinois Commerce Commission*, 118 Ill.App.3d 647, 652, 454 N.E.2d 1200, 1203–04, 73 Ill.Dec. 951, 954–55 (1983).

In addition to noting the uncertainty surrounding the application of the "mend the hold" doctrine, Best Buy also argues that even if the doctrine were available, it would not have any impact on this case because Best Buy has not mended its hold outside the litigation. Best Buy's opposition to the inclusion of certain charges in CAM, it maintains, has been consistent throughout the term of the lease. (*See* Pl.Resp. at 11.) Specifically, Best Buy asserts that it stated in a letter to Harlem–Irving in July 1995, that wages and salaries were excluded from CAM under the lease. Furthermore, Best Buy avers that Harlem–Irving acknowledged, on July 28, 1995, that Best Buy objected to all of the CAM charges. (*See* Pl.Resp. at 12.)

With regard to the non-salary issues, Harlem–Irving attaches great significance to Best Buy's letters, which did not mention some of the items at issue in this lawsuit. Best Buy argues that Harlem–Irving knew in 1995, that Best Buy was rejecting all CAM charges claimed by Harlem–Irving. (*See* Pl.Resp. at 12.)

This court agrees with Best Buy, in that the fact that Best Buy did not cite each objectionable item in its letters is not proof, as a matter of law, that it accepted those items. Under summary judgment standards, even *arguendo* if the "mend the hold" doctrine is applicable outside the litigation context, it is reasonably inferable

that Best Buy's disputes as to the CAM charges were adequately communicated via non-payment and general objections. Thus, a genuine issue of material fact exists and Harlem–Irving's summary judgment motion based on the issue of "mend the hold" is denied.

## V. THE "VOLUNTARY PAYMENT" DOCTRINE

Harlem–Irving contends that even if Best Buy were able to create an appropriate fact dispute about whether the parties intended the categories in issue to fall within CAM charges, the "voluntary payment" doctrine prohibits Best Buy from recouping any payments which Best Buy made before the date of its first protest. Except for the spalling deck, Harlem–Irving claims that the first protest did not occur until October 21, 1997.

■ "Pursuant to the voluntary payment doctrine, money voluntarily paid under a claim of right by one who has knowledge of the relevant facts cannot be recovered by the payor on the ground that the claim was illegal." *Halstead Terrace Nursing Center, Inc. v. Scottsdale Ins. Co.*, 1997 WL 124263, *3 (N.D.Ill. 1997). *See Kanter & Eisenberg v. Madison Assocs.*, 116 Ill.2d 506, 512, 108 Ill. Dec. 476, 508 N.E.2d 1053, 1055 (1987). "Absent fraud, coercion or mistake of fact, monies paid under a claim of right to payment but under a mistake of law are not recoverable." *Halstead Terrace Nursing Center, Inc.*, 1997 WL 124263, at *3. *See Smith v. Prime Cable of Chicago*, 276 Ill.App.3d 843, 848, 213 Ill.Dec. 304, 658 N.E.2d 1325, 1330 (1995), *appeal denied*, 166 Ill.2d 554, 216 Ill.Dec. 11, 664 N.E.2d 648 (1996). In order to "negate the applicability of the voluntary payment doctrine, one must show not only that the claim asserted was unlawful but also that payment was not voluntary, that there was some necessity which amounted to compulsion." *Id.* at 848, 213 Ill.Dec. 304, 658 N.E.2d 1325 (*citing Illinois Glass Co. v. Chicago Tele. Co.*, 234 Ill. 535, 541, 85 N.E. 200, 201 (1908)). "If the payment was made as a result of compulsion or duress, it is stripped of its voluntary character." *Arra v. First State Bank & Trust Co. of Franklin Park*, 250 Ill.App.3d 403, 408, 190 Ill.Dec. 259, 621 N.E.2d 128, 132 (1993).

### A. Failure to Protest

■ Harlem–Irving's argument relies on the proposition that Best Buy's alleged failure to protest to the specific CAM charges, in and of itself, triggers the "voluntary payment" doctrine. (*See* Def. Motion at 11–13.) The court disagrees.

In making this argument, Harlem–Irving relies on the court's language in *Smith v. Prime Cable of Chicago*, 276 Ill.App.3d 843, 849, 658 N.E.2d 1325, 1331, 213 Ill. Dec. 304, 310 (1995). Specifically, Harlem–Irving concludes that in the ordinary situation, the payor must show protest before he can show "compulsion." (*See* Def. Reply at 12.) However, the court in *Smith* went on to say that "compulsion may appear from the circumstances *without* a protest against payment." *Id.* 658 N.E.2d at 1331 (emphasis added). *See Getto v. City of Chicago*, 86 Ill.2d 39, 55 Ill.Dec. 519, 426 N.E.2d 844 (1981). *See generally* 13 Williston on Contracts § 1623, at 770 (3d ed. 1970) ("Nor if a payment is obviously coerced will recovery be denied because no protest was made.") Therefore the allegation (which is disputed by Best Buy) that Best Buy did not protest to the category of non-office wages and salaries is insufficient to support an award of summary judgment in Harlem–Irving's favor.

### B. Duress

Furthermore, Harlem–Irving argues that having made no protest, Best Buy is unable to show duress. Best Buy withheld CAM reconciliation payments for 1993 and 1994 until Harlem–Irving attorney Edwin Wahlen warned twice in his June 23, 1995 letter, that Harlem–Irving would pursue all remedies under the lease if such payments were not made. Those remedies

included eviction[5]. (*See* Pl.Resp. at 6.) Under the liberal definition of "duress," recovery of a payment made under a claim of right can occur:

> "[w]here a person, to prevent injury to himself, his *business or property*, is compelled to make a payment of money which the party demanding has no right to receive and no adequate opportunity is afforded the payor to effectively resist such demand."

*Smith*, 276 Ill.App.3d at 847, 213 Ill.Dec. 304, 658 N.E.2d at 1329. *See Schlossberg v. E.L. Trendel & Assocs., Inc.*, 63 Ill. App.3d 939, 942, 944, 20 Ill.Dec. 741, 744, 380 N.E.2d 950, 953 (1978). Best Buy claims that the letter from Wahlen resulted in its payment of 1993 and 1994 CAM charges (i.e. the letter implicitly threatened injury, in the form of eviction, as to Best Buy's *business* interests), while Harlem–Irving contends that Best Buy's own size and conduct defeat any inference of duress in that after receiving Wahlen's letter, Best Buy still submitted protests about other aspects of CAM.

It is well-established that the issues of duress and compulsory payment ordinarily are factual, to be judged in light of all surrounding circumstances surrounding a given transaction. *Smith*, 276 Ill.App.3d at 850, 213 Ill.Dec. 304, 658 N.E.2d at 1331. *See also Pemberton v. Williams*, 87 Ill. 15 (1877); *Schlossberg v. E.L. Trendel & Assocs., Inc.*, 63 Ill.App.3d 939, 942, 380 N.E.2d 950, 953, 20 Ill.Dec. 741, 744 (1978); *Gerber v. First National Bank*, 30 Ill. App.3d 776, 332 N.E.2d 615 (1975).

Therefore, in light of the material factual dispute surrounding the issue of duress and the application of the "voluntary payment" doctrine, this court denies Harlem–Irving's summary judgment motion on such grounds.

## VI. "ACCORD AND SATISFACTION," "EXECUTORY ACCORD" AND "ACCOUNT STATED"

### A. The Doctrine of "Accord and Satisfaction"

Harlem–Irving contends that after Best Buy disputed the 1993 CAM charge for the repair of the spalling deck, the parties agreed that Best Buy's share of the 1993 CAM charges for that repair would be based on $18,000. Best Buy then paid its proportionate share of the $18,000. (*See* Def. Mot. at 13.) Harlem–Irving thus argues that Best Buy's claim to recoup payment for the 1993 spalling deck is barred under the doctrine of "accord and satisfaction."

▮▮▮▮▮ "An accord and satisfaction is a contractual method of discharging a debt or claim by some performance other than that which was originally due." *Koules v. Euro–American Arbitrage, Inc.*, 293 Ill. App.3d 823, 829, 228 Ill.Dec. 539, 689 N.E.2d 411, 414, (1998). *See Holman v. Simborg*, 152 Ill.App.3d 453, 456, 105 Ill. Dec. 682, 504 N.E.2d 967 (1987). "To constitute an accord and satisfaction, there must be: (1) an honest dispute between

---

**5.** Harlem–Irving argues that the threat of litigation is not enough to constitute duress. According to the court in *Smith*, "payment made pursuant to a threat of litigation or to prevent the bringing of a legal action is regarded as voluntary (citations omitted) for the reason that an ample remedy by way of defense to the suit would exist and because no loss could occur until the lawsuit was instituted and proceeded to judgment." *Smith*, 276 Ill.App.3d at 851–52, 213 Ill.Dec. 304, 658 N.E.2d at 1332. "Thus, Plaintiffs' allegations that they made payment to avoid the threat of lawsuit or actual institution of a lawsuit against them for failure to make payment would not support a finding of payment under compulsion." *Id.* This case, however, is distinguishable from *Smith* in that Best Buy has averred that Harlem–Irving threatened to pursue available remedies injurious to Plaintiff's business property, which, according to the lease, included eviction, repossession by forcible entry and/or subsequent reletting of the premises. Thus, Best Buy did not merely argue that it made payments because of a threat of litigation. *See Kanter & Eisenberg v. Madison Associates*, 116 Ill.2d 506, 514, 508 N.E.2d 1053, 1057, 108 Ill.Dec. 476, 480 (1987).

the parties as to an amount owed between them; (2) a tender of payment with the explicit understanding of both parties that it is in full payment of all demands; and (3) an acceptance of the payment by the creditor with the understanding that it is accepted in full payment." *Koules,* 293 Ill.App.3d at 829–30, 228 Ill.Dec. 539, 689 N.E.2d at 415. *See A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.,* 243 Ill.App.3d 905, 911, 611 N.E.2d 619, 183 Ill.Dec. 356 (1993).

 Best Buy asserts that the 1993 and 1994 CAM reconciliation payments were made under duress. Best Buy "doubts" that a true accord and satisfaction occurred. (*See* Pl.Resp. at 14–15.) Best Buy also argues that the payments of monthly CAM charges were merely estimates and that the payment of estimated monthly CAM payments is not probative of any issue in this case and cannot form the basis for summary judgment. (*See* Pl.Resp. at 15.) This court disagrees. Best Buy agrees with Harlem–Irving's assertion that the parties had reached an agreement on the categories which Best Buy had protested in July 1995. (*See* Def. 12(M), ¶ 61; Pl. 12(N), ¶ 61.) Best Buy did, however, argue that the compromise was limited to an $18,000 charge on the rooftop parking deck for 1993 only. Therefore, this court grants summary judgment in favor of Harlem–Irving on the basis of accord and satisfaction as to Best Buy's claim to recoup its payment for CAM payments in 1993 for the spalling deck repair. This court denies summary judgment as to Best Buy's claims to recoup spalling deck CAM payments for the years after 1993, as there is insufficient evidence to conclude, as a matter of law, that the parties reached a compromise over such amounts.

## B. The Doctrine of Executory Accord

 Harlem–Irving maintains that Best Buy's recoupment claim for sums it paid after Best Buy's protest is barred by the doctrine of "executory accord." "An

'executory accord' is an agreement to accept at some future time a stipulated performance as satisfaction of an obligation." *Collection Professionals, Inc. v. Logan,* 296 Ill.App.3d 959, 964, 231 Ill.Dec. 225, 229, 695 N.E.2d 1344, 1348 (1998). "[A]n executory accord is unenforceable and will not bar enforcement of the original obligation unless: (1) the creditor has clearly accepted the new promise of future performance, itself, and not the ultimate performance of it, as satisfaction, and (2) the new promise is based upon new consideration." *Id.*

 Best Buy contends that the doctrine of "executory accord" does not apply because the consideration for the 1995 compromise regarding earlier prior period CAM charges was payment of allegedly overdue amounts. (*See* Pl.Resp. at 14.) The court agrees. There is no evidence in the record that Harlem–Irving, as the creditor, released a claim against Best Buy in exchange for Best Buy's promise, based on new consideration, to perform an act in the future. In fact, the 1995 compromise was for an earlier period only and all subsequent years and issues were left in dispute for the future. Accordingly, Harlem–Irving's motion for summary judgment on the basis of "executory accord" is denied.

## C. The Doctrine of "Account Stated"

 Harlem–Irving argues, in the alternative, that even if there were no "executory accord," Best Buy's claim about the spalling deck repairs is barred by the doctrine of "account stated." An "account stated" is "an agreement between parties who have previously conducted monetary transactions that the account representing the transactions between them is true, and that the balance is accurate, together with a promise to pay such balance." *National Service Assoc. v. Capitol Bankers Life Ins. Co., Inc.* 1995 WL 708664, *4 (N.D.Ill. 1995). *See Dreyer Medical Clinic, S.C. v. Corral,* 227 Ill.App.3d 221, 226, 169 Ill.Dec. 231, 591 N.E.2d 111, 114 (1992). An ac-

count stated is established when a "statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection." *National Service Assoc.*, 1995 WL 708664 at *4 (citation omitted). "An account stated, however, 'cannot be made the instrument to create an original liability; it merely determines the amount · of debt where liability previously existed.'" *Id.* at *4 (*quoting Dreyer Medical Clinic*, 227 Ill.App.3d at 226, 169 Ill.Dec. 231, 591 N.E.2d at 114 (citations omitted)).

Harlem–Irving maintains that Best Buy paid monthly CAM charges for the spalling deck, ·and did not protest until October 1997. According to Harlem–Irving, these payments. coupled with Best Buy's failure to object for two years is enough to show an "account stated" for the remaining payments. (*See* Def. Mot. at 16.) Best Buy, on the other hand, contends that there is no "account stated" because it never accepted Harlem–Irving's CAM invoices for the spalling deck or any other disputed item, except for the 1995 compromise regarding the prior year charge(s). Consistent with the conditions of the compromise, which was made without prejudice to Best Buy's future claims, Best Buy claims that it continued to object to Harlem–Irving's CAM calculation and withheld CAM reconciliation payments for subsequent years. (*See* Pl. Resp: at 13.) As such, there is no basis for this court to conclude that Best Buy promised to pay an account stated. Therefore, Harlem–Irving's motion for summary judgment based on the doctrine of "account stated" is denied.

## CONCLUSION

In view of the foregoing, summary judgment is granted for the Defendant on the issue of accord and satisfaction as to the payment by· Best Buy of its proportionate share of the 1993 CAM charge for the repair of the spalling deck. In all other respects, Defendant's Motion for Summary Judgment is denied.