**OLDE DISCOUNT CORPORATION,**
**Plaintiff,**

v.

**Deanna YOUNG, Defendant.**

**Deanna Young, Plaintiff,**

v.

**Olde Discount Corporation and NASD Regulation, Inc., Defendant.**

**Nos. 99 C 7842, 99 C 7932.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 28, 2000.

Erwin Cohn, Charles A. Cohn, Cohn & Cohn, Chicago, IL, of Record for Deanna Young.

Ronald P. Kane, Michael A. Kraft, Gomberg, Kane & Fischer, Ltd., Chicago, IL, of Record for Olde Discount Corporation.

Teri L. Nelson, National Association of Securities Dealers, Inc., Washington, DC, Daniel Patrick Moakley, NASD Regulation, Inc., Chicago, IL, of Record for NASD Regulation, Inc.

---

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Olde Discount Corporation ("Olde") has sued Deanna Young ("Young") seeking to confirm an arbitration award in Olde's favor. In turn, Young has filed suit against Olde and NASD Regulation, Inc. ("NASD") seeking to vacate the arbitration award. For the following reasons, the court (1) grants Olde's motion to confirm the arbitration and (2) denies Young's motion to vacate the arbitration.

## I. BACKGROUND

Olde is a Michigan corporation that operates as a broker-dealer in securities. Young is an individual. In 1990, Young and her husband opened a joint account with Olde. When she and her husband opened that joint account, Young signed an Investors Account Agreement, which contained an arbitration clause. (*See* Olde Mot., Ex. C.) Also, both Young and her husband—Thomas Young ("Thomas")—maintained individual IRA accounts with Olde. In connection with his IRA account, Thomas signed a beneficiary statement. Initially, Thomas named Young as the sole beneficiary. However, in 1995, Thomas submitted a new beneficiary form—naming Young and Thomas's sister, Susan Oehrlein ("Oehrlein"), as co-beneficiaries.[1]

On May 17, 1997 Thomas Young passed away, leaving as part of his estate his individual IRA account serviced by Olde. Sometime between May 17, 1997 and October 1, 1997, Young presented Olde with beneficiary forms—signed in 1985 and 1986—which stated that she was the sole beneficiary of her husband's IRA account.

---

1. Olde claims that Young was aware of this revised documents. Young, on the other hand, claims that she was unaware of the change in beneficiaries and that she is the sole beneficiary of that account. Young argues that Thomas's account did not have a designated beneficiary. Upon reviewing the documents attached to Olde's Motion to Confirm, it appears that Ms. Oehrlein was the co-beneficiary of Thomas's IRA account (Olde Mot., Exs. E–F.) Although the beneficiary form signed by Thomas in 1995 referred to a different number than the account in service at the time of Thomas's death, the change in account number reflects only a transfer of that account from Olde's Schaumburg office to Olde's Evanston office. (*See id.*)

Young requested that all of the assets of her husband's IRA account be transferred directly into her own individual IRA account—which was also serviced by Olde. Olde transferred approximately $180,511 into Young's individual IRA account on October 1, 1997.

In December of 1997, Oehrlein sent a letter to Olde, informing Olde of the improper transfer of funds to Young's account and demanding one-half of the amount of assets of Thomas's IRA account. Olde then reviewed all of the documentation regarding Thomas's IRA account and determined that it owed Oehrlein $87,000, or approximately one-half of the value of Thomas's IRA account. After paying Oehrlein the $87,000, Olde attempted to recover the amount of the overpayment from Young. Despite making a demand requesting repayment of the $87,000, Olde was unable to secure payment from Young.

On July 23, 1998, Olde sent an arbitration demand to Young. In that demand, Olde asked Young to select a panel—either the New York Stock Exchange ("NYSE") or the National Association of Securities Dealers ("NASD")—to hear the arbitration. Because Young did not respond to the arbitration demand, Olde selected the NASD to provide the arbitration panel and then submitted a Statement of Claim in Arbitration. Young moved to dismiss the arbitration proceeding, arguing that the dispute was not covered by the arbitration clause and, therefore, the arbitrators and the NASD had no jurisdiction over the claim. The NASD disagreed and denied Young's motion to dismiss. The arbitration proceeded with both parties taking part in discovery and, ultimately, the arbitration hearing itself.

However, approximately two weeks before the arbitration hearing, Young filed a complaint for a preliminary injunction against Olde and NASD with the Circuit Court of Cook County. The complaint sought to enjoin the arbitration hearing from proceeding because, Young argued, the NASD had no jurisdiction over the dispute. The Circuit Court denied the preliminary injunction and the hearing proceeded.

At the arbitration hearing, witnesses testified and both parties submitted legal briefs, exhibits and other evidence in support of their respective positions. Following a two-day hearing, the arbitration panel, "[a]fter considering the pleadings, testimony, documentation, evidence, and argument presented at the hearing," determined that Young was liable to Olde for $116,833.44. That amount included $87,000 in compensatory damages, $8,366 in interest, $20,000 in attorney's fees, $967.44 in costs, and $500 for filing fees.

On December 2, 1999, Olde filed a petition to confirm the arbitration award. On December 6, 1999 Young also filed a petition to vacate the arbitration award. Based on a finding of relatedness, this court consolidated the two cases on January 2, 2000.

## II. DISCUSSION

Olde moves to confirm the arbitration award, arguing that the underlying dispute was properly put before the arbitration panel and that the award was not made in manifest disregard for the law. Young, on the other hand, seeks to vacate the award, arguing that the arbitrators had no jurisdiction over the dispute and, in the alternative, that the award was made in manifest disregard for the law. Thus, the parties raise—and dispute—two main issues: (1) the arbitrability of the underlying dispute and, consequently, the NASD's jurisdiction over that dispute and (2) the validity of the arbitration award itself.

### A. The Arbitrability of the Dispute

█ Unless the parties clearly and unmistakably provide otherwise, the issue of whether the parties agree to arbitrate a dispute is to be decided by the court. *International Assoc. of Machinists & Aerospace Workers v. Fansteel, Inc.*, 900 F.2d 1005, 1010 (7th Cir.1990) (citing *AT &*

*T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). If the arbitration agreement is silent as to who decides the scope of the arbitration agreement, there is a presumption *against* the issue being decided by the arbitrator. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944–45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, where there is no express agreement that the arbitrator resolve the issue of arbitrability, the court is to make an independent determination of that question. *First Options,* 514 U.S. at 944–45, 115 S.Ct. 1920; *Fansteel,* 900 F.2d at 1010.

■ Olde argues that Young agreed to have the issue of arbitrability resolved by the arbitration panel because she submitted the question to the panel through her motion to dismiss. However, "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." *First Options,* 514 U.S. at 946, 115 S.Ct. 1920. Further, the Seventh Circuit has found that party may argue arbitrability to the arbitration panel without losing her right to independent court review. *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509, 514 n. 7 (7th Cir.1992); *Local 458–3M v. Carqueville Printing Co.,* No. 91 C 5267, 1992 WL 132854, at *3 (N.D.Ill. May 29, 1992). In this case, Young objected to the arbitrator's jurisdiction in a motion to dismiss the arbitration. Although that motion was denied, it preserved Young's objections to the arbitrability of the dispute. Further, even though the arbitration panel in this case attempted to resolve this question, it is the responsibility of the court to make this determination. *See First Options,* 514 U.S. at 944–45, 115 S.Ct. 1920 (holding that even though the arbitrator ruled on the issue of arbitrability, it was the responsibility of the court to address that issue de novo). In this case there is no express provision in the Investors Agreement or in the arbitration clause itself that states the parties agree to have the issue of arbitra-

bility decided by the arbitrators. Thus, the court will decide whether the parties agreed to arbitrate this dispute.

■ Having decided that it is appropriate for the court to resolve the issue of arbitrability, the next question is whether the dispute is, in fact, arbitrable. The Supreme Court has instructed that "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In deciding whether this dispute is subject to arbitration, the court must bear in mind that "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.,* 1 F.3d 639, 641 (7th Cir.1993) (citations omitted). In resolving the issue of arbitrability, the court must first determine coverage under the arbitration clause to ascertain whether the present dispute falls within its scope. However, when an agreement is broad, such as one which provides arbitration of "any" disputes arising out a contract, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail..." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

Young argues that she did not agree to arbitrate this dispute and, therefore, the NASD had no jurisdiction over the dispute. Specifically, Young contends that the underlying dispute arises from her husband's account—which is where the money was withdrawn from—and that she is not a party to that account or the Investors Agreement which Thomas Young signed in accordance with that account. Further, Young argues that, although she did sign an Investors Agreement when she opened her joint account with Olde, the money at issue in this dispute was trans-

ferred into her IRA account, and not the joint account which the agreement governed. Thus, Young argues, she did not agree to arbitrate this dispute. The court disagrees.

First, the terms of the Investors Agreement clearly state: "**You agree to submit any and all controversies or claims arising out of the relationship established by this agreement to arbitration ....**" (Olde Mot., Ex. C (emphasis in original).) Moreover, the Investors Agreement clearly contemplates that customers will open various types of accounts. (*Id.*) Thus, that agreement—signed by Young—applies to all of Young's accounts serviced by Olde.

Second, the arbitration clause contained in the Investors Agreement is very broadly worded. It clearly states that any and all disputes arising out of the relationship between Young and Olde will be subject to arbitration. The relationship established by the agreement was a business relationship between Young, as a customer, and Olde, as a broker-dealer. There is no evidence that either party expressly excluded certain disputes from the arbitration agreement. On the contrary, the broad language of the agreement allows for "any and all" disputes that arise between Young, as a customer of Olde, and Olde, as Young's broker-dealer, to be resolved by arbitration. "At the very least, an 'arising out of' arbitration clause would arguably cover such disputes, and, under our cases, this is all that is needed to trigger arbitration." *Sweet Dreams,* 1 F.3d at 642–43 (citing *Schacht v. Beacon Ins. Co.,* 742 F.2d 386, 391 (7th Cir.1984)) (finding that the parties could have taken steps to narrow the scope of the arbitration clause but the broadly worded clause—stating all disputes "arising out of" the agreement—provided for wide range of arbitrability). Thus, this dispute was arbitrable and the NASD had jurisdiction to hear the case.

Finally, the money at issue was deposited directly into Young's account. Disputes about money being withdrawn and deposit-

ed into her account are clearly included under the relationship established by the Investors Agreement. Young argues that, had she had an account with a different bank, Olde could not have enforced the arbitration agreement. While this may be true, the court need not decide that issue because Young did, in fact, have an account with Olde and she did, in fact, sign an agreement with Olde which contained a broadly-worded arbitration clause. The underlying dispute arises out of an improper transfer of funds to Young's account. The grievance which Olde filed with NASD was the result of money transferred into Young's Olde account, which Olde claims was improperly transferred. Had Young deposited $1,000 into her account, but Olde mistakenly credited her for $2,000, such a dispute would clearly be covered by the arbitration clause. Likewise, in this case, Young had over $180,000 transferred into her account when she was only entitled to half that amount. Thus, this dispute arises out of the relationship between Young and Olde and is governed by the arbitration clause.

Given the strong presumption towards arbitration recognized by both the Supreme Court and the Seventh Circuit, the courts finds that, in reasonably interpreting the arbitration clause, it could cover the current dispute. *See Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927; *Sweet Dreams,* 1 F.3d at 642. Accordingly, the dispute was arbitrable and the NASD's jurisdiction over Olde's claim was proper. The court must now determine the validity of the arbitration award.

**B.** *The Arbitrators' Award*

It is well established that the court plays a very limited role in reviewing the decisions of arbitrators. Public policy supports "an extremely low standard of review necessary to prevent arbitration from becoming merely an added preliminary step to judicial resolution rather than a true resolution." *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis,* 849

F.2d 264, 267 (7th Cir.1988) (citations omitted). In fact, judicial review of arbitral awards is "grudgingly narrow." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1253 (7th Cir.1994).

■ More specifically, when reviewing an arbitration award, a court may not vacate an arbitration award simply because it disagrees with the arbitrator's determination of law or fact. Moreover, "[e]rrors of law or fact by the arbitrators, or an insufficiency of evidence supporting the award, do not provide adequate grounds of vacation." *Wilson v. Sterling Foster & Co.*, No. 98 C 2733, 1998 WL 749065, at *2 (N.D.Ill. Oct.15, 1998). Traditional presumptions provide that a "mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not reason for refusing to enforce the award ..." *Geneva Sec., Inc. v. Johnson*, 138 F.3d 688, 692 (7th Cir.1998) (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). Further, an arbitrator is not required to state the reasons for his or her decision. *Eljer*, 14 F.3d at 1254. "The general presumption in favor of arbitration compels courts to affirm even the most general awards." *Geneva Sec.*, 138 F.3d at 692 (citing *Eljer*, 14 F.3d at 1254).

■ In this case, the arbitrators' award was general and did not provide specific reasons for their decision. However, from the parties' briefs submitted to the arbitrators, it appears that both parties presented legal arguments, including the doctrine of voluntary payment. (*See* Olde Mot., Exs. L–M.) In general, Olde argued that, under the general rules of law, it was entitled to repayment of the money because it was paid under a mistake of fact—that being that Young was entitled to only half the assets in her husband's account and not the entire proceeds. On the other hand, Young argued that the doctrine of voluntary payment precludes Olde from recovering any money it paid to Young.[2] Thus, because the award says that the arbitrators considered all the arguments presented at the hearing (*Id.*, Ex. A), the court will assume that the arbitration panel considered these legal theories.

It is in very limited circumstances that courts set aside or vacate an arbitration award. For example, in *Geneva Securities*, several claims were made to the arbitration panel which were ineligible for arbitration and, given the general nature of the arbitration award, it was impossible to tell if the arbitrators relied on those ineligible claims. *See Geneva Sec.*, 138 F.3d at 692 (vacating the award). In this case, only one dispute was put before the arbitration panel and that claim was eligible for arbitration. (*See infra* sect. II.A.) Further, in their award, the arbitrators state that they considered "the pleadings, testimony, documentation, evidence, and arguments presented at the hearing." (Olde Mot. Ex. A, p. 2.) Thus, on its face, the arbitration award is valid.

Young, however, argues that the award should be vacated because it was made in manifest disregard for the law. The Supreme Court and the Seventh Circuit have recognized "manifest disregard for the law" as grounds for vacating an arbitration panel's decision. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *National Wrecking Co. v. International Bhd. of Teamsters*, 990 F.2d 957, 961 (7th Cir. 1993). "Manifest disregard" is beyond mere error of law or failure to understand or apply the correct law. In alleging manifest disregard, Young must demonstrate that "the majority of arbitrators deliberately disregarded what they knew to be the law in order to reach their result."

---

**2.** Under the voluntary payment doctrine, money voluntarily paid under a claim of right by a party who has knowledge of the relevant facts cannot then be recovered by the payor on the ground that the claim was illegal. *Halstead Terrace Nursing Ctr. v. Scottsdale Ins. Co.*, No. 96 C 5902, 1997 WL 124263, *3 (N.D.Ill. Mar.17, 1997).

*Wilson,* 1998 WL 749065, at *3 (citing *Health Servs. Management Corp. v. Hughes,* 975 F.2d 1253, 1267 (7th Cir. 1992)).

Specifically, Young argues that the voluntary payment doctrine precludes Olde from recovering any overpayment and that, in awarding the money to Olde, the arbitrators acted in manifest disregard for the law. Olde, on the other hand, argues that Young has failed to satisfy her burden insofar as she has failed to show that a majority of the arbitrators deliberately disregarded the law. (*See id.*) Although the award in this case is general, it does not appear that the panel deliberately disregarded the law. Both parties made viable legal arguments to the arbitration panel regarding equitable remedies and defenses including the voluntary payment doctrine, which the panel says it considered. Although the voluntary payment doctrine *could* preclude Olde's recovery, it is not applicable in all situations and there are exceptions to the doctrine. For example, courts have found that if a mistake of fact is alleged, then the voluntary payment doctrine does not apply. *See Kane–Miller Corp. v. Lakeview Trust & Sav. Bank,* No. 88 C 7561, 1989 WL 13295, at *1 (N.D.Ill. Feb.13, 1989) (holding that money paid under mistake of fact may be recovered regardless of the negligence of the payor); *see also Best Buy Co. v. Harlem–Irving Cos.,* 51 F.Supp.2d 889, 897–98 (N.D.Ill.1999) (explaining the doctrine of voluntary payment and when it is inapplicable); *Halstead Terrace Nursing Ctr. v. Scottsdale Ins. Co.,* No. 96 C 5902, 1997 WL 124263, at *3–4 (N.D.Ill. Mar.17, 1997) (explaining the broader and more liberal definition of duress, an exception to the voluntary payment doctrine). In the award, the arbitrators claim that they considered all legal arguments, which included the doctrine of voluntary payment. Young has not showed this to be false. Further, the court finds that the arbitrators could have considered—and rejected—the voluntary payment doctrine. It is not up to the court to decide if this was correct. Thus, the court cannot say that,

in awarding Olde the amount of the overpayment, the arbitrators' award was made in manifest disregard for the law. Accordingly, the court affirms the arbitration award.

Finally, in her complaint for vacation of the award, Young also challenges the NASD's award of forum fees. The NASD allows the arbitrators to assess these fees against a party. Thus, the forum fees are within the scope of the arbitration. Accordingly, the court confirms the assessment of the forum fees.

In sum, the court finds that the underlying dispute was arbitrable and, therefore, that the arbitration panel correctly asserted jurisdiction over the dispute. Further, the arbitrators' award was not made in manifest disregard for the law. Accordingly, the court confirms that arbitration award in the amount of $116,833.44.

### CONCLUSION

For the foregoing reasons, the court confirms the arbitration award in full. Olde Discount Corporation's motion to confirm the arbitration award is granted. Deanna Young's motion to vacate the arbitration award is denied. Final judgment is entered in this case in favor of Olde Discount Corporation and NASD Regulation, Inc. and against Deanna Young.